Lester Bernard Doyle was indicted for the unlawful sale of marijuana in violation of § 20-2-70, Code of Alabama 1975. The jury found the appellant "guilty as charged in the indictment" and the appellant received a sentence of five years' imprisonment in the penitentiary and a $2,500 fine.
On the evening of November 13, 1984, Gerard Herring, an officer with the narcotics unit of the Alabama Bureau of Investigation was working on an undercover operation with Investigator John Givens of the ABI and Officer John White of the Dothan Police Department. White gave Herring $100 from the Dothan Police Department's drug fund with which to purchase narcotics.
Around 8:00 p.m. Herring drove to D.P.'s gameroom on North Range Street in Dothan. He was looking for Daniel Paul Moore who was the owner of the D.P.'s gameroom but he could not find him.
Herring saw the appellant standing in front of the Red Fox Lounge which was next door to D.P.'s gameroom. He then spoke to an individual who went over to the Red Fox and brought the appellant to Herring. This individual then left.
Herring acted like he didn't want to talk to the appellant. The appellant assured Herring that it was all right to talk to him. He said that he was Moore's uncle and they were in business together.
The appellant then told Herring that they didn't have any cocaine at that time if that's what Herring wanted. He then asked what Herring needed so he could see if he could get it for him.
Herring told the appellant he didn't want to talk to him because he didn't want to spread his business around. The appellant said that Moore would be out of town for a few days because he was picking up cocaine.
He then told Herring that he had some "cents-a-million" grass. Herring asked again if the appellant was Moore's uncle and the appellant replied that he was. Herring asked if the appellant's name was Moore and the appellant said that his name was Lester Doyle.
Herring then wanted to see what the appellant had. The two walked to the side of D.P.'s gameroom. The appellant said, "If you're the man, right now I ain't got but one bag on me now, and it ain't no big deal — just possession." (R. 10).
Next, the appellant reached into the sock of his right leg and pulled out a plastic bag which contained green plant material. When Herring asked if it was good stuff, the appellant assured him that it was. The appellant asked for $25.00. Herring gave him the money and the appellant gave Herring the bag. Herring put the bag in his pants and told the appellant to tell Moore he'd be back in a few days to see him.
After Herring left D.P.'s gameroom, he drove a short distance and wrote down the name which the appellant gave him and a description of the appellant. He then drove to the Dothan Police Department.
During the time Herring was at D.P.'s gameroom, White and Givens drove by and saw Herring's car parked there. They returned to the police station and waited for Herring to return. When Herring met with White and Givens, he gave the plastic *Page 998 
bag to White. White put the bag into a manila envelope and sealed it. Both White and Herring initialed the envelope. White then locked the envelope in his desk where it remained until he gave it to Joe Saloom, a criminologist with the Department of Forensic Sciences.
Herring gave a description of the appellant to White and Givens when he got back to the police station. Givens and White then drove to North Range Street and saw the appellant walking near D.P.'s gameroom. The officers did not arrest the appellant at this time because Herring was working undercover at the time and there were other cases pending which they didn't want to jeopardize.
Saloom analyzed the plant material he received in the manila envelope from Givens and White. He determined the plant material was marijuana and the plastic bag contained 3.04 grams.
Nora Sanford testified that she, the appellant, her sister and two friends went to the Red Fox at 6:40 p.m. on November 13, 1984. Approximately 30 minutes after they arrived the police came in and asked the appellant to come outside so they could talk to him. Sanford accompanied the appellant outside. After talking with the police, the appellant and Sanford went back inside the Red Fox. The group remained there until 8:30 and then went to Jessie's Lounge until 12:00. The appellant and Sanford went home at this time. Sanford stated that the appellant was with her from 6:40 that night until 12:00 when they went home. Sanford said that a man named June Moore was in the Red Fox during the time they were there. Moore was the same size as the appellant and was dressed in a similar manner to the appellant on that night.
The appellant's testimony was essentially the same as Sanford's testimony. He denied selling marijuana to Herring and said he only knew Daniel Paul Moore casually.
 I
The appellant's first contention on appeal is that the State failed to establish a prima facie case. The facts of this case, which have been set out herein, clearly show that there was sufficient evidence presented by the State from which the jury could conclude, by fair inference, that the appellant was guilty of the offense charged in the indictment.
In Brown v. State, 460 So.2d 263 (Ala.Crim.App. 1984), this court stated:
 "The State here sufficiently established a proper chain of custody and the identity of the prohibited substance as marijuana. Slaughter v. State, 411 So.2d 819 (Ala.Crim.App. 1982) and authorities cited. We are also of the opinion that the State of Alabama properly established a prima facie case of the sale of the marijuana in question by the appellant, . . . to the undercover officer,. . . . Sterling v. State, 421 So.2d 1375 (Ala.Crim.App. 1982) and authorities therein cited. Slaughter v. State, supra; Radney v. State, 342 So.2d 942 (Ala.Crim.App. 1977), cert. denied, 342 So.2d 947 (Ala. 1977)."
 II
The appellant's next contention on appeal concerns the following remarks of the prosecutor during closing arguments:
 "MR. BROWN: There are all sorts of things that can happen to him, including parole and probation —
 "MR. GRUENEWALD: We object and move for a mistrial, Your Honor.
 "MR. BROWN: He brought it up talking about several years out of the defendant's life, and that is just in response in kind.
 "MR. GRUENEWALD: I am saying I am objecting to Mr. Brown's remarks about all kind of things happening to the defendant — probation, parole. . . .
 "THE COURT: Sustained. Let's stick to the evidence." (R. 71).
The prosecutor's remarks are clearly improper. Eaton v.State, 278 Ala. 224, 177 So.2d 444 (1965). However, the trial judge immediately sustained defense counsel's objection to those remarks. Therefore, the error was cured by the trial judge's prompt *Page 999 
action in sustaining the objection and statement "Let's stick to the evidence." Lee v. State, 265 Ala. 623, 93 So.2d 757
(1957). Curative instructions were not given by the trial judge as none were requested by the appellant.
We have carefully examined this entire transcript and find no error therein. The judgment is, therefore, affirmed.
Affirmed.
All the Judges concur.