**Rowena Jeanne PATTERSON, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 1084S381.

Supreme Court of Indiana.

July 25, 1986.

Geoffrey A. Rivers, Muncie, for appellant.

Linley E. Pearson, Atty. Gen., Amy Schaeffer Good, Deputy Atty. Gen., Indianapolis, for appellee

SHEPARD, Justice.

Rowena Patterson was convicted on May 18, 1984, of second degree murder, Burns § 10–3404 (Repealed October 1, 1977), for the August 1963 death of her step-daughter, Rita. She was sentenced to life imprisonment.

Several issues have been raised in this direct appeal, one of which requires our reversal of the conviction. Because of our disposition of the case, we address only the following issues:

1. Whether the court's disqualification of two adult defense witnesses is reversible error;

2. Whether Patterson was denied due process because twenty years elapsed between the alleged offense and her arrest;

3. Whether the charging information was fatally deficient because it did not state the cause of Rita's death; and,

4. Whether the court's declaration of mistrial over Patterson's objections was erroneous, thereby barring a second trial.

The testimony at trial revealed that Rita was pronounced dead at St. John's Hospital in Anderson on August 30, 1963. Appellant told authorities that Rita and her sister, Patty, had been fighting over a doll at the top of the stairway in their house when Rita either fell down the stairs or was pushed by Patty. An inquest followed; the coroner ruled that Rita's death was an accident. Patterson was not prosecuted.

Twenty years later, Patty pursued her step-mother's prosecution, claiming that Patterson had beaten Rita to death. When Rita died, she was six years old, and Patty was seven. Patty testified at trial that on the morning Rita died, she and Rita had wet the bed, which prompted Patterson to declare they would each receive a "whipping." Patty said appellant told her to sit at the bottom of the stairs and watch Rita's punishment in anticipation of her own beating which would follow. Patty said Patter-

son began beating and kicking Rita. She whipped her with a metal pole. Patty testified the beating was a continuous series of blows during which Rita screamed constantly. Finally, Patty testified, Patterson picked Rita up and slammed her into a bathtub; Rita fell silent.

Patty said appellant then laid Rita on a bed and washed and dressed her. The next memory Patty claims to have is of the ambulance driver covering Rita with a sheet and saying, "This child's been beaten to death."

Both the physician who performed the original autopsy, Dr. Kim, and the doctor who examined Rita after exhumation agreed that Rita's injuries were not likely to have been caused by a fall down the stairs. Each testified that Rita's injuries were probably caused by a beating of forceful blows. She had bruises and contusions over her back and legs and multiple head injuries. Her liver and pancreas were ruptured. Dr. Kim testified that when he performed the autopsy he formed the opinion that Rita had sustained a broken or fractured spine. He also stated that in 1963 he had disagreed with the coroner who had declared the death accidental.

Testimony from Patty and others revealed that beatings were regularly inflicted in the Patterson household. In 1960, when Rita was three years old, she suffered severe burns in the shower, and the State promoted the inference that Patterson deliberately burned the child. Patterson claimed she was about to wash Rita, became distracted, and discovered Rita standing under the scalding water.

Patty explained that fear, confusion, and love for her father kept her silent about Rita's death for many years. As a teenager, when she finally confronted the family with appellant's acts, she claims she was told falsely that appellant had been tried and acquitted of the homicide.

Another Patterson sister, Debra, testified that she was seven when Rita died. She said Patty was lying. Debra said she, Rita, and Patty were upstairs and Rita and

Patty were fighting over a doll. Appellant was downstairs talking with Josephine Greenwalt, the mother of Rita and Patty, on the telephone. Debra went into her room, heard thumping noises going down the stairs, and discovered Rita at the bottom of the stairway and Patty at the top. Debra also corroborated her mother's story about the burns Rita received in 1960.

Greenwalt testified for the defense that she was talking with Patterson on the telephone the morning Rita died, and that she also spoke briefly with the girls. She said appellant finally said she had to hang up to check on the girls, who were fighting at the top of the stairs.

Another relative testified that when Patty was twelve years old she told the witness that she felt "awful bad" because she had pushed Rita down the stairs and that appellant had nothing to do with it.

Appellant's husband, Virgil, testified that he had beaten Rita rather severely the night before she died. He said appellant never whipped or beat the children; rather, she restricted her punishments to spankings.

According to Virgil, Patty had on occasion accused him of killing Rita. Once, she had tried to run Virgil down with a car. She and Patterson had fought often as Patty grew older, and Patty had physically attacked Patterson in an argument over food stamps. Testimony was heard that Patty's reputation for truthfulness was very poor. In short, this was a trial in which the jury was truly called upon to weigh the credibility of the witnesses.

## I. *Erroneous Exclusion of Defense Witnesses*

Two other children, Robert and Richard, were in the house when Rita died. In 1963, Robert was six years old, and Richard was almost five. The State objected to their competency as witnesses, citing Ind.Code § 34–1–14–5, which states in relevant part that children under ten years of age are not competent witnesses unless it appears they understand the nature and obligation of an oath. The court accepted competency as the appropriate issue and held a hearing on the matter; the trial court ruled that both witnesses should be excluded on the basis of their youth *at the time of the incident.*

The court erred in excluding these witnesses. Any person over the age of ten is presumed competent to testify. *Ware v. State* (1978), 268 Ind. 563, 376 N.E.2d 1150. Although Richard and Robert were children under the age of ten when Rita died (as were Debra and Patty) their age at the time does not affect their present undisputed ability to understand an oath, or to perceive and narrate events, the true tests of competence. *Grecco v. State* (1960), 240 Ind. 584, 166 N.E.2d 180. They claim to have actual and authentic memories of the event, and they were not of such infancy that this is an impossibility. Their credibility was for the jury to determine. *Ware, supra,* 376 N.E.2d 1150.

A defendant has a constitutional right to present a defense regardless of its credibility as seen by the trial court. *U.S. v. Cerro* (1985), 775 F.2d 908 (7th Circuit). Patterson sought to present the testimony of two witnesses who claimed to have information about Rita's death. We believe it was grave error to exclude these witnesses on the basis of an inapplicable statutory provision. The question becomes the effect of that error on the verdict.

Of course, not all constitutional error is reversible error. It is always perilous to speculate about the effect which improperly excluded evidence would have had. *Id.* However, if the reviewing court can be satisfied beyond a reasonable doubt that the error did not contribute to the conviction, reversal is not required. *Chapman v. California* (1967), 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705.

We are not convinced the error here was harmless beyond a reasonable doubt. There is a vast difference between evidence that would prevail over a claim of insufficiency and evidence that is so convincing that a jury could not properly find against it. *Coates v. State* (1985), Ind.App., 487

N.E.2d 167. Here we cannot conclude that the evidence of Patterson's guilt was so overwhelming that the unavailability of two defense witnesses did not influence and contribute to the guilty verdict.

Richard and Robert, if believed, would have corroborated the version, denied by Patty, that she and Rita fought at the top of the stairway. They would have substantiated the claim that another adult in the household, appellant's mother, had beaten Rita. Most importantly, Richard claimed to have seen Patty push Rita down the stairs.

Patty was seriously impeached for bad motive, bias, and untruthfulness. Her testimony was completely contradicted by Debra. Although both medical experts testified Rita probably died from a beating, her death was ruled an accident in 1963. We cannot say beyond a reasonable doubt that the introduction of Richard's and Robert's exculpatory testimony would not have tipped the balance against the State. Therefore, Patterson's conviction must be reversed.

## II. *Speedy Trial—Delay in Prosecution*

■ Patterson claims she was denied speedy trial and due process of law because she was arrested and tried twenty years after Rita's death. The Sixth Amendment right to a speedy trial does not apply here, as the delay did not occur *after* arrest or indictment. *U.S. v. Marion* (1971), 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468.

■ Generally, statutes of limitations operate as the primary guarantee that stale criminal charges will not be pursued. In Indiana, a prosecution for murder may be commenced at any time. Ind.Code § 35–41–4–2(a). Nonetheless, even where a charge is brought within the statute of limitations, the particulars of the case may reveal that undue delay and resultant prejudice constitute a violation of due process. However, the mere passage of time is not presumed to be prejudicial, and it is the defendant's burden to prove that undue prejudice arises from the delay. *Scott v. State* (1984), Ind.App., 461 N.E.2d 141. Events from trial may shed light upon the claim of prejudice. *U.S. v. Marion,* 404 U.S. 307, 92 S.Ct. 455.

Patterson claimed in her motion to dismiss that the passage of time had prejudiced her because the police records of her polygraph examination were missing. However, there is no dispute between the parties as to the results of the test, which were not admissible anyway. She claims Patty gave a statement to authorities in 1963 which is now missing. The evidence most favorable to the judgment below was that no such statement was taken.

Patterson argues she was prejudiced because the doll which she claims the girls fought over is missing, as is Rita's clothing, and because the house itself has been torn down. We are unconvinced that the doll would have been of much import. As the State points out, any damage apparent on the doll would not necessarily prove Patterson's claim. There was little dispute about how Rita was attired when she died, to the extent it was important at all. And, several witnesses for each party testified about the layout of the house and the structure of the stairs, including the fact they were dangerous and dimly lit.

Patterson argues the defense was prejudiced because of the death of friends, family, neighbors, and the county coroner. Appellant has not sustained her burden of demonstrating how the absence of these witnesses harmed her. None were alleged to have been eye witnesses to the death. For first-hand accounts, the testimony of the State's chief witness, Patty, was completely contradicted by another sister, Debra. Furthermore, another defense witness testified that she was talking with Patterson on the phone just before Rita supposedly fell. Virgil was on hand to bolster the theory that he inflicted some of Rita's injuries. Moreover, several witnesses joined in the substantial effort which the defense made to impeach Patty as a witness. Despite the death of the coroner, it was undisputed that his opinion was that Rita's death was an accident. Patterson's claim that memories have become vague

was contradicted by the specific nature of most testimony, including her own.

Moreover, Patterson has not shown that the delay in her prosecution was a deliberate attempt by the State to gain unfair advantage. In 1963, the State's investigation of Rita's death was halted in light of the coroner's ruling and the favorable polygraph results. It was only when Patty pursued the matter that her step-mother was prosecuted.

█ The interest of society in finding the truth about the death of a fellow human being is considerable. Patterson was not denied due process when she was prosecuted twenty years after the commission of the murder.

### III. *Information*

The charging information against Patterson read in pertinent part:

Rowena Jeanne Patterson on or about the 30th day of August 1963 at and in the County of Delaware, State of Indiana, did then and there unlawfully, purposely, feloniously and with premeditated malice kill and murder Rita Diane Patterson, who was then and there a human being....

Patterson filed a motion to dismiss the information on the grounds it did not state the cause or mechanism of death. The motion was denied.

█ The State concedes the information should have stated that death resulted from beating or blunt force; yet, we are persuaded by its argument that Patterson's substantial rights were not prejudiced by the deficiency. *See, Schlacter v. State* (1984), Ind., 466 N.E.2d 1; *Johnson v. State* (1982), Ind. 442 N.E.2d 1065.

The key issue is .whether Patterson was sufficiently apprised of the charges against her so that she could prepare her defense. *Dorsey v. State* (1970), 254 Ind. 409, 260 N.E.2d 800. The probable cause affidavit supporting the information stated the cause of death as a beating, which was the offense for which Patterson was under investigation twenty years earlier. Further-

more, the motion to dismiss the information was not filed until after one trial ended in mistrial, so that the parties had already engaged in discovery, pretrial investigation, and trial itself. Clearly, Patterson was aware that she was charged with murder by beating.

Appellant argues that, had the State specifically stated in the information that Rita's death was caused by beating, the State would have been foreclosed from "changing" its theory of the manner of death from "beating" to "throwing into a bathtub." The State did not change its theory; the allegation that Rowena threw Rita into the bathtub was part and parcel of the general allegation of beating.

### IV. *Mistrial over Appellant's Objection—Manifest Necessity*

In 1963, Patterson and her husband each took polygraph examinations regarding Rita's death. Apparently, the results were that neither harbored feelings of guilt over Rita's death. Prior to trial, Patterson moved to introduce those results into evidence. Her motion was denied, and the State's motion *in limine* was granted prohibiting any mention at trial of the polygraph examination or its results.

Nonetheless, Patterson's first trial ended early in a mistrial when a State's witness inadvertently referred to Patterson's polygraph examination. Patterson informed the court she did not want a mistrial, and the State indicated it would neither seek nor object to a declaration of mistrial.

Patterson claims the court abused its discretion in declaring a mistrial. Therefore, she claims, the discharge operated as an acquittal and her second trial violated her right not to be twice placed in jeopardy.

█ The prohibition against double jeopardy does not bar subsequent proceedings where the trial court exercises sound discretion in declaring a mistrial over a defendant's objection. The court has the authority to declare a mistrial where there exists manifest necessity for doing so. *White v. State* (1984), Ind., 460 N.E.2d 132.

■ Here, the judge demonstrated a careful and correct assessment of the situation before him:

This is an unusual case gentlemen from the standpoint that it is not the defendant asking for a mistrial. The question that I must answer is whether or not an admonishment to the jury to disregard that remark would be sufficient under the circumstances and frankly gentlemen, I do not know whether or not the jury would draw an inference from that last statement and if they were to draw an inference I have no idea whether it would be prejudicial to the defendant or the State of Indiana. The question then becomes on of the inherent power of the Court to determine whether or not the mentioning of the polygraph examination, the voluntary taking of a polygraph by defendant is such that it prevents a fair trial and causes prejudicial harm to this trial at this point. Is it that prejudicial? That's the issue. I have researched the cases and I think the law is clear, that a Court, whether a defendant agrees or disagrees, whether the State agrees or disagrees, the Court does have the inherent authority to control the proceedings to the extent that, if in the Court's opinion, a prejudicial matter has been injected into the trial, the court then may at that point, take whatever action necessary to cure the defect, if that's possible or if its not possible to cure the defect, then in that event to grant a mistrial.... When justice requires that a particular trial be discontinued is a question that should be decided by persons conversant with factors relevant to the determination ... the law has invested courts ... with the authority to discharge a jury from giving any verdict, whenever in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act for the ends of public justice that would otherwise be defeated. They are to exercise a sound discretion on the subject and it is impossible to define all the circumstances which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution under urgent circumstances and for very plain and obvious causes and ... The Court should be extremely careful how they interfere ... But after all, they have the right to order the discharge and the security which the public have for the ... sound ... exercise of this discretion rests in this as in other cases upon the responsibility of judges under their oaths of office. ... Under all circumstances in this case, and based upon the violation of the motion in limine ... committed by a witness ... it is the opinion of the Court that prejudical error has occurred and it is not, we are not able to remedy that error by a simple admonishment to the jury. Therefore the court will grant a mistrial in this cause.

Here, a state's witness referred to appellant's polygraph examination. We have already noted that such testimony is generally inadmissible at trial, a rule which serves to protect both the individual defendant and the ends of justice in general. There is nothing in the record to indicate that the testimony was a product of overreaching or deliberate harpooning by the prosecutor, who would not have wanted testimony about the test results to be interjected. It was an inadvertant, unexpected reference to a fact already ruled inadmissible by the trial court preliminary to trial. Once interjected, it was the court's duty to carefully appraise its consequences.

■ It is clear the trial court proceeded cautiously and with due regard for Patterson's rights. Patterson argues the court should have polled the jury prior to its ruling; however, she has not provided any authority in support of that proposition. The effect of the witness' mistake was, as the court stated, difficult to assess. Although a trial judge should use his authority to grant a mistrial only in the gravest of circumstances and with great care, we scrutinize the decision with deference. *White, supra,* 460 N.E.2d 132. The decision the trial judge made here was reached with considerable care and we conclude that it was within the range of his discre-

tion. Patterson's second trial was not barred.

Because of the exclusion of two competent defense witnesses, the judgment of conviction is reversed and the cause remanded for a new trial.

GIVAN, C.J., and DeBRULER, PIVARNIK and DICKSON, JJ., concur.