Leon Albert Prince was indicted in January 1990 for the offense of carnal knowledge of a girl under 12 years of age or the abuse of a girl in the attempt to have carnal knowledge of her. This offense allegedly occurred in 1972. At that time, the offense charged in the indictment was a violation of Title 14, § 398, Code of 1940 (Recompiled 1958). In May 1990, defense counsel filed a motion to dismiss and to quash the indictment on speedy trial and due process grounds. An evidentiary hearing on the motion was held, after which the trial court granted defense counsel's motions on due process grounds. On appeal, the State argues that the court's ruling in this matter was wrong. The following testimony was given during the evidentiary hearing on defense counsel's motion.
The victim testified that in 1972 she was seven years old. At the time she was living with her family in Inglenook and Prince was living with his family in Tarrant City. Both families attended the same church. The victim was introduced to Prince by her mother or her aunt. The victim testified that the alleged offense occurred sometime between February and Easter of 1972. Some time after the incident happened (the victim can not remember how long), her grandmother was giving her a bath and it was painful. Her grandmother noticed blood in the victim's underwear and asked the victim what had happened. The victim told her that Prince had pulled down her underwear and had touched her private parts and her legs. The victim's grandmother then told the victim's parents what the victim had told her. Her mother then took her to see her pediatrician, Dr. McDonald. She did not tell her grandmother, her parents, or Dr. McDonald that she had been penetrated by Prince. After seeing Dr. McDonald, the victim's parents told her not to tell anybody what had happened with Prince. *Page 876 
Over the course of the next few years, the victim told several girlfriends, her high school boyfriend, and her guidance counselor that she had been molested (not penetrated). In 1984, the victim told her first husband that she had been penetrated by Prince and he objected to her telling anybody about this. She also told this to Dr. Tim Davis, a gynecologist whom she saw shortly after she got married. The victim divorced her first husband in 1986 and she married her current husband in 1987. She told her current husband of the alleged incident with Prince.
In October 1988, the victim received a call from someone (she can not remember who), who told her that Prince was working with children. She then called Bob McGregor with the Jefferson County District Attorney's office to see if Prince could be prosecuted. She first told McGregor that she was calling for a friend but she later admitted that she was calling with reference to herself. The victim then met with McGregor and Frances Sartain at the Prescott House and told them what Prince had done to her in 1972. The Prescott House is used for interviewing children who have been physically or sexually abused.
Homer Jack McDonald testified that he was a pediatrician in the Eastwood Mall area of Birmingham in 1972. He testified that he has no independent recollection of seeing the victim with regard to this incident and does not remember any allegations of sexual abuse concerning this victim. In 1972, it would have been unusual to see this type of incident in his practice, he said. If the allegation of sexual abuse had been brought to his attention, he said, he would have examined the genital area very closely and probably would have seen some evidence of trauma if penetration had occurred within several days of his examination. Dr. McDonald stated that he might not have done a thorough examination if it was only alleged that the victim's pants had been pulled down. However, he said he probably would have made some indication of this fact in his records.
The victim's mother testified that she had taken the victim to Prince's house on two occasions to play with Prince's daughter in 1972. Her mother told her that the victim had told her mother that Prince had touched her in her pubic area. When the victim's mother tried to question the victim about this, the victim became hysterical. She also stated that she had seen blood on the victim's underwear but that she can not remember when and she did not take the underwear to Dr. McDonald. When she took the victim to see Dr. McDonald, she told him that the victim had been touched in her pubic area and that she wanted him to look at her. When Dr. McDonald came out of the examination room, he told her that he did not do a pelvic examination because the victim became hysterical when he tried to do this. However, he said he did not notice anything during his observation of the pubic area. The victim's mother told the victim not to say anything about this incident because the victim refused to discuss the details of the incident with her.
The victim's grandmother testified that the victim told her that Prince told her to pull her pants down so that he could touch her and that Prince said that his daughter let him do that with her. The victim did not tell her that she had been penetrated. She said she does not remember any bloody underwear or that the victim was in the bathtub when the victim told her about this incident.
The victim's father testified that his wife told him that she thought Prince had touched the victim but that she said that the victim would not talk about it. He stated that he called the pastor of his church and the pastor of the church where Prince moved to and told them what had happened. He said that they were not interested and so he decided to drop the matter. He said that the victim never told him that she had been penetrated even though they had a very close relationship. He testified that he never told the victim not to tell anybody or not to prosecute.
Robert McGregor, Jr., testified that in the late summer of 1988, while he was employed in the Jefferson County District *Page 877 
Attorney's office, he received a call from the victim. Initially she said that she was calling for a friend and that she wanted some general information about sexual offenses, and she specifically asked about the statute of limitations with regard to sexual offenses against children. After they talked for a while, McGregor asked if she had used her correct name and she stated that she had not. She then said that she was the victim. Some days later, McGregor and Frances Sartain met with the victim at the Prescott House, which is used for interviewing children who have been physically or sexually abused. The victim told them that she had been penetrated by Prince but she was not sure if it was the rectum or the vagina. After talking with the victim, McGregor told her that he was not sure that they could prosecute, because of the statute of limitations, but that he would check it out and would get back to her. When McGregor checked, he found out that rape was a capital offense in 1972 and that there was no statute of limitations for capital offenses at that time. McGregor relayed this information to the victim, and the victim told him she wanted to prosecute Prince. Several law enforcement agencies then began their investigations with regard to this case. When McGregor left the District Attorney's office in April 1989, this case was assigned to Teresa Pulliam. The case was first presented to the grand jury in October 1989, and McGregor answered some of the grand jury's questions regarding this case. Because McGregor was not sworn at the time, a decision was made to continue the case until the January 1990 grand jury, which returned the indictment in this case.
Dr. McDonald's medical records concerning the victim were introduced into evidence. There was a notation "consultation about child being molested" in March 1973. However, there was no mention of any consultation with Dr. McDonald with regard to sexual abuse in 1972, the year this incident allegedly occurred.
 "The statute of limitations is the principal device, created by the people of a state through their legislature, to protect against prejudice arising from a lapse of time between the commission of a crime and an indictment or arrest. United States v. Harrington, 543 F.2d 1151 (5th Cir. 1976); United States v. Zane, 489 F.2d 269, 270 n. 1 (5th Cir. 1973), cert. denied, 416 U.S. 959, 94 S.Ct. 1975, 40 L.Ed.2d 310 (1974). Statutes of limitations 'represent legislative assessments of relative interest of the state and the defendant in administering and receiving justice.' United States v. Marion, 404 U.S. 307, 322, 92 S.Ct. 455, 464, 30 L.Ed.2d 468 (1971). Limitations statutes, however, are not the only available protection against prejudice. United States v. Lovasco, 431 U.S. 783, 789, 97 S.Ct. 2044, 2048, 52 L.Ed.2d 752
(1977). The particular provisions of the Speedy Trial Clause of the Sixth Amendment are available with respect to prejudicial delay after formal indictment of information, or actual arrest. Lovasco, 431 U.S. at 788, 97 S.Ct. at 2047; Marion, 404 U.S. at 313-22, 92 S.Ct. at 459-64; cf.
Fed.R.Crim.P. 48(b). However, the Speedy Trial Clause is inapplicable where, as here, the delay concerns a period of time prior to indictment, information, or arrest.
 "Where the possibility of prejudice derives from pre-indictment delay, the defendant in a criminal case must first resort to the applicable statute of limitations. Id. at 323, 92 S.Ct. at 464. Only where the applicable statute of limitations has failed to offer relief for pre-indictment delay, are claims of actual prejudice in violation of the Due Process Clause of the Fourteenth Amendment ripe for judicial consideration. The Supreme Court has declared, however, that the 'Due Process Clause has a limited role to play' in protecting against the prejudice of pre-indictment delay. Lovasco, 431 U.S. at 789, 97 S.Ct. at 2048. See also Marion, 404 U.S. at 320, 92 S.Ct. at 463; United States v. Harrington, 543 F.2d 1151 (absent showing of substantial prejudice amounting to Fifth Amendment due process violation, prosecution is controlled by statute of limitations); United States v. Sample, 565 F. Supp. 1166, 1174 (E.D.Va. 1983) (statute *Page 878 
of limitations is a legislatively determined safeguard against potential prejudice while due process is safeguard against actual prejudice)."
Stoner v. Graddick, 751 F.2d 1535, 1540-41 (11th Cir. 1985).
As was testified to by McGregor, the offense with which Prince was charged was a capital offense in 1972, and at that time, there was no limitations period in which to bring a prosecution for a capital felony offense. See Title 14, § 398, Code of Alabama 1940 (Recompiled 1958); Title 15, § 219, Code of Alabama 1940 (Recompiled 1958); Stoner v. State,418 So.2d 171 (Ala.Crim.App.), cert. denied, 418 So.2d 184 (Ala. 1982),cert. denied, Stoner v. Alabama, 459 U.S. 1128, 103 S.Ct. 764,74 L.Ed.2d 978 (1983). Therefore, this prosecution was not barred by the statute of limitations. Thus, we now must determine whether the trial court properly decided that Prince established a due process violation sufficient to justify the dismissal of his case and the quashing of the indictment in this case.
The law is well-settled that in order to establish a due process violation due to preindictment delay, a defendant must show "(1) that the delay caused actual prejudice to the conduct of his defense, and (2) that the delay was the product of deliberate action by the government designed to gain a tactical advantage." United States v. Lindstrom, 698 F.2d 1154, 1157-58
(11th Cir. 1983); United States v. Butler, 792 F.2d 1528, 1533
(11th Cir.), cert. denied, Waites v. United States,479 U.S. 933, 107 S.Ct. 407, 93 L.Ed.2d 359 (1986). See also UnitedStates v. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468
(1971). "A defendant is charged with a heavier burden of proof in showing a preindictment delay due process violation than in showing a denial of his speedy trial rights." Stoner,418 So.2d at 180.
In order to establish the first prong of a due process violation, a defendant must show "actual prejudice, not the mere possibility of prejudice, and that the delay 'caused substantial prejudice to [the defendant's] rights to a fair trial.' " Stoner, 418 So.2d at 180. Although the delay between the alleged offense and the indictment was lengthy, the "passage of time per se is not a constitutional violation."Stoner, 418 So.2d at 180, quoting Lovasco. "Prejudice is not to be presumed because of a lengthy delay in initiating prosecution." United States v. Butler, 792 F.2d at 1533 (citingStoner v. Graddick, 751 F.2d 1535 (11th Cir. 1985)).
 "We would certainly expect that actual prejudice would be more likely in a case such as this than in a case involving significantly less delay. Over a greater period of time witnesses are more likely to die, documents may well disappear or be destroyed, and memories are much more likely to fade. However, the ultimate inquiry in any case is the same: whether substantial prejudice has occurred. If no substantial prejudice is proved, then the guidepost for judging impermissible delay is the Alabama statute of limitations."
Stoner, 751 F.2d at 1544.
The only allegation of prejudice in this case (besides the length of delay itself) is the inconsistency in the testimony of the witnesses due to their diminished ability to recall basic facts due to the passage of time. "[D]iminished recollection alone does not constitute substantial prejudice."Stoner, 418 So.2d at 180. See also Butler. In fact, the loss of memories in this case seems to benefit Prince, rather than to prejudice him. Thus, Prince has failed to prove actual prejudice.
Furthermore, even if Prince had proven actual prejudice, this would not be enough to establish a due process violation. "[P]roof of prejudice is generally a necessary but not sufficient element of a due process claim." United States v.Lovasco, 431 U.S. 783, 790, 97 S.Ct. 2044, 2048-49,52 L.Ed.2d 752 (1977). The reasons for the delay must also be considered.Lovasco. When we examine the reasons for the delay in this case, it is clear that Prince has not met his burden of proof with regard to the second prong. He has not established that the delay in this case "was the product of deliberate action by the government designed *Page 879 
to gain a tactical advantage." Lindstrom.
In Patterson v. State, 495 N.E.2d 714 (Ind. 1986), a somewhat similar fact situation was addressed. In 1963, the defendant's stepdaughter, Rita, died. The defendant told the police that "Rita and her sister, Patty, had been fighting over a doll at the top of the stairway in their house when Rita either fell down the stairs or was pushed by Patty." Although the doctor who performed the autopsy did not believe that the child had died as a result of a fall down the stairway (he believed that she had been beaten to death), the coroner ruled that Rita's death was an accident and the case was closed. Twenty years later, Patty came forward and claimed that the defendant had beaten Rita to death, and the prosecution of the defendant began. The court held that the defendant did not show that her prosecution was delayed by a deliberate attempt by the prosecution to gain an unfair advantage.
The similarity between this case and Patterson is that the prosecutions were not initiated until the witness in Patterson
and the victim in this case went to the authorities many years after the alleged crimes had occurred. The important distinction is that in Patterson, the prosecution had reason to suspect that a crime may have occurred at that time. However, in this case, the State had absolutely no knowledge that a crime had occurred until the victim came forward in 1988. If the court in Patterson did not find that the delay in Patty's coming forward could not be attributed to the State even though it knew that a death had occurred and that Patty was a witness, certainly the delay here cannot be attributed to the State before the victim made it known to the authorities that a crime had occurred. See also Chambliss v. State, 373 So.2d 1185
(Ala.Crim.App.), cert. denied, 373 So.2d 1211 (Ala. 1979);Stoner. Thus, the majority of the preindictment delay, the 16 years between the offense and when the victim contacted the District Attorney's office, cannot be held against the State.
There is no assertion by Prince, nor any evidence in the record, that the delay between the time the victim made it known in the summer of 1988 that a crime had occurred and the time this case was first presented to the grand jury in October 1989 was a deliberate attempt by the prosecution to gain an unfair tactical advantage. McGregor testified that once the victim told him about this offense and he realized that a prosecution would not be barred by the statute of limitations, he turned the case over to the authorities to investigate. "Delay caused by a good faith ongoing investigation will not offend 'fundamental conceptions of justice.' "Lindstrom, 698 F.2d at 1158 (quoting Lovasco).
There does appear to be an assertion that the delay between the time that the case was first presented to the grand jury in October 1988 and the time that Prince was indicted by the January 1990 grand jury was a deliberate attempt on the State's part to gain an unfair tactical advantage. This would only be true if the October 1989 grand jury was ready to vote not to indict Prince and the State decided to recommend a "no bill" to see if another grand jury would return an indictment. However, an examination of the minutes of the October 1989 grand jury and the testimony at the hearing do not support this scenario. The reason this case was continued was that McGregor had made a statement to the October 1989 grand jury when he was not under oath and the State decided to continue the case to the next grand jury in "an abundance of caution" so that there would be no problems with the indictment. In fact, Teresa Pulliam testified that the October 1989 grand jury was ready to vote to indict Prince before the decision was made to continue the case to the next grand jury. Therefore, we do not find that any delay in this case was the product of deliberate action by the State designed to gain a tactical advantage.
While we agree with the trial judge that the evidence in this case is very weak due to the lengthy delay between the alleged offense and the indictment, we cannot ignore *Page 880 
the well-established law and precedents in this regard.[1]
 "[T]he Due Process Clause does not permit courts to abort criminal prosecutions simply because they disagree with a prosecutor's judgment as to when [and whether] to seek an indictment. Judges are not free, in defining 'due process,' to impose on law enforcement officials our 'personal and private notions' of fairness and to 'disregard the limits that bind judges in their judicial function.' Rochin v. California, 342 U.S. 165, 170, 72 S.Ct. 205, 209, 96 L.Ed. 183 (1952)."
Lovasco, 431 U.S. at 790, 97 S.Ct. at 2049.
We hold that Prince did not establish a due process violation due to the preindictment delay in this case. Thus, the trial court erred by granting the motion to dismiss and to quash the indictment in this case. The judgment is reversed and the cause is remanded for further proceedings.
REVERSED AND REMANDED.
All the Judges concur.
[1] "[R]esearch has disclosed only one officially reported case [UnitedStates v. Birney, 686 F.2d 102 (2d Cir. 1982)] in which the dismissal of so much as a single count of a federal indictment on the grounds of preindictment delay has survived the appellate process." 203 N.Y.L.J. p. 1, c. 1 (January 9, 1990).