[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 357 
The appellant, Leon Albert Prince, was convicted of carnal knowledge of a girl less than twelve years old, in violation of Title 14, § 398, Ala. Code 1940 (Recomp. 1958). He was sentenced to 30 years' imprisonment. He raises five issues on this appeal from that conviction.
 I.
The appellant alleges that his right to a fair trial was violated by numerous instances of prosecutorial misconduct. Allegations of prosecutorial misconduct begin with almost the first page of the court reporter's transcript of the proceedings and continue repeatedly throughout the entire record.
 A.
During the voir dire of the jury venire, the following occurred:
 "MS. PULLIAM [assistant district attorney]: Does everyone understand that upon conviction that probation is always an option?
 "MR. BREWER [defense counsel]: Objection, Your Honor. I want to be heard, and I want to be heard outside the presence of the jury on that.
 "THE COURT: You can hear from me right now. That is an improper question. As a matter of fact, if it's over ten years, there is no probation available.
"MR. BREWER: Yes, sir.
"MS. PULLIAM: Judge, that's the —
"MR. BREWER: Your Honor —
 "THE COURT: There's no question about it in my mind.
 "MS. PULLIAM: The terms of the sentence in the case are optional with the Court. The jury recommends the sentence, and it's up to the Court.
"THE COURT: No, you mentioned probation.
"MS. PULLIAM: Yes, sir.
"THE COURT: There's no probation over ten years.
 "MR. BREWER: And, Your Honor, not only that, what she's attempting to get these good people to do is to say it's okay if you convict him because he can always get probation, and I move for a mistrial for prejudice.
 "THE COURT: Well, he can't get probation, and I want that understood, if it's over ten years.
 "MS. PULLIAM: Judge, under what case law are you traveling?
 "THE COURT: I'm not supposed to answer your questions. You go on with your questions of the jury.
 "MS. PULLIAM: Yes, sir. May I be heard outside the presence of the jury?
"THE COURT: Sure.
 "MS. PULLIAM: Is there anybody because of what they've just heard Judge Cole say in this case would even be more hesitant to listen to the evidence in a fair way and to do what is right when it comes to deciding accountability in this case?
"(No response.)
 "MS. PULLIAM: Can you put aside any possibility of a sentence outside your concentration? Normally, that is never an issue for the jury. In this case, it is, which makes this case different. Is there anybody who cannot do that, who cannot keep the two separate?
"(No response.)" R. 132-35.
After the jury had been selected and excused for the day, the prosecutor initiated further discussion with the trial court about the matter of probation. She explained that she considered her comment on probation "only fair" (R. 267) because in its opening comments the trial court informed the jury that a conviction carried a sentence that the jury must set at ten years' to life imprisonment and that defense counsel had "reemphasized that." R. 267. The trial court responded: "It's not fair in my league. It is absolutely abominable. I was amazed when you said it." R. 267. See also R. 271. It is undisputed that the prosecutor was the only person to mention probation before the jury.
After the trial court overruled defense counsel's motion for a mistrial, defense counsel *Page 358 
requested that the trial court not attempt any curative instruction on the prosecutor's comment. R. 301-05.
Later, outside the presence of the jury and during the course of the trial, the trial court expressed its opinion that the prosecutor's remark was "error." R. 1070. On whether his comments cured the error, the trial court stated: "That may be cured. I'm not too sure it will. But, anyway, I think it's an error in the case, and I'll let the — if necessary, I guess a higher authority than Cole will —." R. 1070
During the deliberation of the jury, the jury indicated that it had a question. That question was, "Is there a possibility of parole or probation?" R. 1378. Based on that request, defense counsel asked the trial court that the jury be given further instructions.
 "MR. BREWER: On behalf of the defendant, Your Honor, we would state that first of all that that is evidence in and of itself that the remarks earlier made by the prosecutor have had an effect and a bearing upon the minds and the members of this jury. And based on that and that evidence of that, that we would renew our earlier motions for a mistrial and for a judgment of acquittal on these charges.
 "Now, if the Court overrules those, then we would say to the Court that it would only be fair to this defendant to notify the jury that parole is certainly not something the Court can speak to them about, period. It's a correctional matter, but we think that it would only be fair to this jury to identify that and to let them know that Leon Prince can only receive probation if he gets a sentence of ten years and not a day more.
 "THE COURT: I am not telling them a single, solitary thing. Of course, this is caused by our enthusiastic prosecutrix." R. 1376-77.
The trial court then gave the jury the following instruction:
 "You sent out this question: 'Is there a possibility of parole or probation?'
 "Ladies and gentlemen, the law compels me to say that that is not a subject that I can discuss with you in this trial. In other words, that is not to enter into your — I can't answer it. The law says I can't, so that's not of your concern." R. 1378.
Defense counsel then objected to the trial court's refusal to instruct the jury "as to what level of probation was available in this case." R. 1380. Defense counsel did not request the trial court to instruct the jury that the matter of parole or probation was not for its consideration.
"[I]t has long been the law of this State that comments upon the probability or possibility of what might happen under a particular sentence, falling outside the evidence and the law of the case, constitute improper argument." Ex parte Rutledge,482 So.2d 1262, 1265 (Ala. 1984). A prosecutor should not comment on the possibility of probation or parole before the jury.
 "There is no question but that the argument of the solicitor to the effect that a man sentenced to the penitentiary will at some time become eligible for pardon or parole was improper. . . .
 "The remarks of the solicitor were of the class of improper argument which may be remedied or their evil effect eradicated by instructions of the court."
Lee v. State, 265 Ala. 623, 629, 93 So.2d 757, 763 (1957). See also Eaton v. State, 278 Ala. 224, 227, 177 So.2d 444, 448
(1965). "In Alabama the attorneys are forbidden to talk to the jury about probation and parole." Davis v. State,494 So.2d 851, 854 (Ala.Cr.App. 1986) (if defense counsel opens door during closing argument regarding range of possible sentences, prosecutor may say during his final argument that there is possibility of probation, if, in fact, that is true). A prosecutor's comment on the possibility of probation or parole is "clearly improper." Doyle v. State, 487 So.2d 996, 998
(Ala.Cr.App. 1986); Henderson v. State, 460 So.2d 331, 333
(Ala.Cr.App. 1984) (permissible as a reply in kind).
 "A jury should perform its duty both as to the question of guilt and as to the extent of punishment, if within the province of the jury, irrespective of what someone else, including the trial court, appellate courts and all probation, parole and pardoning authorities might do in the future. That is not a matter for the jury to consider. A rule permitting any agency in the administration and execution of justice to knowingly attempt to ease its conscience or evade *Page 359 
its responsibility in the assumption that another agency will rectify its failure to perform its separate responsibility would lead inevitably to subversion, irrespective of the good intentions that might at times prompt such action."
Murray v. State, 359 So.2d 1178, 1180 (Ala.Cr.App. 1978). Although each of the above cases involved a prosecutor's comment in argument to the jury, we consider the above principles equally applicable where the comment is made during the voir dire of the jury venire.
Although erroneous, "[a]rgument in the nature of that under consideration is not so inflammatory and prejudicial that its harmful quality cannot be eradicated." Murray, 359 So.2d at 1181. See Doyle, 487 So.2d at 998-99 (judge's action in sustaining objection and stating, "Let's stick to the evidence" sufficient to cure error). "Any prejudice suffered by the appellant as a result of the prosecutor's argument was eradicated by the trial judge's prompt action [in immediately sustaining defense counsel's objection]." Hooks v. State,534 So.2d 329, 361 (Ala.Cr.App. 1987), affirmed, 534 So.2d 371
(Ala. 1988), cert. denied, 488 U.S. 1050, 109 S.Ct. 883,102 L.Ed.2d 1005 (1989). See Thomas v. State, 373 So.2d 1149,1159-60 (Ala.Cr.App.), affirmed, 373 So.2d 1167 (Ala. 1979), vacated on other grounds, 448 U.S. 903, 100 S.Ct. 3043,65 L.Ed.2d 1133 (1980).
The appellant's trial began on November 4, 1991, and a conviction was returned on November 8. Considering the length of the appellant's trial, the curative action taken by the trial court (even though minimal), and the particular objections made and the curative actions that defense counsel did and did not request, we find that the prosecutor's comment does not constitute a ground for a reversal of the appellant's conviction.
 B.
The prosecutor was not guilty of misconduct and did not violate the principles of Brady v. Maryland, 373 U.S. 83,83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), by allegedly failing to disclose the existence of an expert witness prior to trial.
At trial, Dr. Kristi Mulchahey, a pediatric gynecologist, testified as a witness for the prosecution as a medical expert on child sexual abuse and on the "child sexual accommodation syndrome," which is a syndrome "that explains some of the features that we had noticed in the way children act after they've been sexually abused." R. 998. See generally Ex parteHaney, 603 So.2d 412 (Ala. 1992) (discussing the battered wife syndrome). Dr. Mulchahey had never examined the victim in this case. Her testimony was not favorable to the appellant.
Brady requires only the disclosure of evidence that is favorable to the defendant or exculpatory. United States v.Stewart, 820 F.2d 370, 374 (11th Cir. 1987). "[T]he general rule [is] that an accused is not entitled to discover statements of government witnesses before trial." Ex parte Pate,415 So.2d 1140, 1144 (Ala. 1981). A defendant is not entitled to discovery of the identity of state witnesses merely because they are witnesses for the prosecution. See Curry v. State,502 So.2d 836, 841 (Ala.Cr.App. 1986); Rule 16.1(e), A.R.Crim.P.
Furthermore, we note that there was a real factual conflict as to whether the prosecutor had informed defense counsel of the existence of the expert. The record does not support the appellant's suggestion that the trial court ordered the prosecution to disclose the identity of its expert prior to trial.
 C.
The prosecutor was not guilty of misconduct in commenting on evidence that the trial court had suppressed.
The trial court sustained defense counsel's objection and refused to allow the prosecution to introduce certain photographs of a wedding which would allegedly show the appearance of the victim at the time of the crime. The appellant alleges that the prosecutor violated that order by displaying the photographs on the counsel table in the sight of the jury.
In response to the objection of defense counsel, the trial court indicated that the photographs were "turned over." R. 583. Defense counsel took issue with the judge's *Page 360 
finding, and the trial court stated, "Well, she turned it over backwards." R. 583. Under these circumstances this court must assume that the trial court's description of the event was accurate. "The trial judge's actions are presumptively correct in the absence of a showing to the contrary." Gratton v. State,456 So.2d 865, 872 (Ala.Cr.App. 1984).
 D.
The appellant maintains that the prosecutor made two improper comments.
During the trial, the trial court refused to permit the prosecution to introduce into evidence a videotape of the residence where the sexual abuse alleged occurred and the surrounding neighborhood. When the trial court sustained the objection of defense counsel to a different matter, the prosecutor exclaimed, "We have been through the admission of a videotape, Judge, and certainly you're not —" R. 934. In response to defense counsel's general objection, the following occurred:
 "THE COURT: We haven't got any videotape in evidence. * * * I've told you that this videotape is absolutely inadmissible. You knew it before you tried it.
 "MR. BREWER [defense counsel]: Your Honor, I move for a mistrial again, and I ask the Court to rule on my motion for the record.
 "MS. PULLIAM: I'm not attempting to admit a videotape. I am simply attempting to have an investigator testify to —
"MR. BREWER: Your Honor —
"THE COURT: That he made a videotape. Yes, I know.
"MS. PULLIAM: No, sir, not that he made one.
 "MR. BREWER: I move for a mistrial again. That's the fourth time.
 "THE COURT: I know. I'm overruling you." R. 934-36.
The trial court then sustained defense counsel's objection and prevented the witness from testifying concerning the automobile trip he and the victim took the week before trial. At the appellant's request, the trial court instructed the jury, "Disregard it, ladies and gentlemen. I've said it's inadmissible." R. 938.
From the context of the matter in the record, it appears that the prosecutor was merely attempting to get the "investigator to draw out the route that he took her on the date last week." R. 939. The appellant maintains that the "mention of the videotape was prejudicial because it bolstered the testimony of the alleged victim . . . about her recollection of the neighborhood where [the appellant] lived at the time of the incident." Appellant's brief at 7. Contrary to the appellant's argument in brief, the prosecutor did not refer to the videotape in her closing argument. Appellant's brief at 7. We find that the instructions of the trial court were sufficient to cure any error in the comment of the prosecutor.
In closing argument, the prosecutor indicated that the victim finally came forward with her complaint of the sexual abuse because she had "learned other information from authorities . . . about other children" (R. 1205), that the victim did not want "it to happen to anybody else," and that she had "been told things by the District Attorney's Office about Leon Prince and other children, and that is why I'm continuing." R. 1328-29. There was no objection made to any of these comments until the motion for new trial. That objection was too late. "The general rule is that improper argument of counsel is not ground for a new trial or the subject of review on appeal unless there is due objection by counsel or a motion to exclude, a ruling thereon by the court, an exception thereto, or a refusal of the court to make a ruling. . . . The only exception to the foregoing rule is where the argument is so greatly prejudicial that its harmful effect is viewed as ineradicable, it may be made a ground for a motion for new trial." Johnson v. State, 272 Ala. 633, 636, 133 So.2d 53,55-56 (1961).
 II.
The appellant claims that his trial counsel was ineffective. New counsel was appointed to represent the appellant on appeal. That counsel filed a motion for new trial but did not raise the issue of ineffective assistance of counsel. In Ex parteJackson, *Page 361 598 So.2d 895, 897 (Ala. 1992), the Alabama Supreme Court "reaffirm[ed] the principle that ' "claims of ineffective assistance of counsel may not be considered for the first time on direct appeal." ' "
 III.
The appellant asserts that the trial court erred in denying his request to sequester the jury.
Immediately prior to trial, defense counsel requested the trial court to sequester the jury "or in the alternative [to] close these proceedings." R. 37. That motion was based on the contention that "[t]his case has already received a great amount of publicity." Id. The following then occurred:
 "THE COURT: Well, they aren't going to be sequestered. I can guarantee you that. I haven't sequestered a case except capital cases in probably six years.
 "MR. BREWER: I understand, having researched the Court's record on that, Your Honor, but I had to ask anyway.
 "THE COURT: I've had just as many momentous cases as this is supposed to be.
 "MR. BREWER: I except for the record, Your Honor, but I do understand." R. 38.
As is discussed in Part IV below, the offense for which the appellant was tried occurred in 1972. At that time, Title 30, § 97(1), Ala. Code 1940 (Recomp. 1958), required the defendant, his attorney, and the prosecutor to consent in open court to the separation of the jury "in any prosecution for felony, whether capital or non-capital." Under this section, "[i]t [was] well settled that where it appear[ed] in the record that the trial court, without the defendant's consent, allow[ed] the jury to separate . . ., such create[d] prima facially a cause for reversal." Pratt v. State, 48 Ala. App. 341, 344,264 So.2d 571, 573-74 (1972).
When the Alabama Code of 1975 was adopted, Title 30, § 97(1) was transferred to § 12-16-9. Table of Comparative Sections, Vol. 2, Ala. Code 1975 at 609. In 1982, the legislature amended § 12-16-9 "to remove the requirement that the accused and his counsel and also the prosecuting attorney in any noncapital felony case consent in open court before the trial court may permit the jury to separate during the pendency of a trial." Act. No. 82-566, 1982 Ala. Acts 943, 944. The amended version, which is codified at Ala. Code 1975, § 12-16-9 (1986 Replacement Vol.), was clearly in effect in November 1991, when the appellant's trial took place.[1]
In Robinson v. State, 428 So.2d 148 (Ala.Cr.App. 1982), cert. denied, 462 U.S. 1137, 103 S.Ct. 3122, 77 L.Ed.2d 1374 (1983), the appellant argued that he should have been permitted to strike his jury under the former version of § 12-16-100, which granted a defendant two strikes to the prosecutor's one and which was in effect at the time of the offense. In upholding the trial court's application of the amended statute, which provides that the parties "strike off names alternately," Ala. Code 1975, § 12-16-100 (1986 Replacement Vol.), and which was in effect at the time of the trial, we stated:
 "The jury striking process, being procedural in nature, is governed by the applicable law in effect on the trial date. . . . This is distinguished from matters which are jurisdictional or substantive in nature, which would be governed by the applicable law in effect on the date of the alleged offense, as was the case in Bracewell v. State, 401 So.2d 123
(Ala. 1979), and Hansen *Page 362 v. State, 375 So.2d 564 (Ala.Cr.App. 1979)."
Robinson v. State, 428 So.2d at 152. Accord Hubbard v. State,500 So.2d 1204, 1217 (Ala.Cr.App.) ("[i]t is well settled that such a statutory amendment is a procedural change, not a substantive change, and thus the jury selection in this case was properly governed by the statute in effect at the time of the trial"), affirmed, 500 So.2d 1231 (Ala. 1986), cert. denied,480 U.S. 940, 107 S.Ct. 1591, 94 L.Ed.2d 780 (1987).
The laws regarding substantive and jurisdictional matters in effect at the time of the crime are applied because changes in those laws occurring after the offense may constitute ex post facto laws. See generally Collins v. Youngblood, 497 U.S. 37,110 S.Ct. 2715, 111 L.Ed.2d 30 (1990); Beazell v. Ohio,269 U.S. 167, 46 S.Ct. 68, 70 L.Ed. 216 (1925). In contrast, "[p]rocedural rules generally regulate trial proceedings, and these rules are not generally targeted as proscribing unwanted conduct [or otherwise falling within the definition of an ex post facto law]. Therefore, it does not seem unfair to require parties to comply with the rules of procedure applicable at the time in which they begin a new trial proceeding." Mozee v.American Commercial Marine Service Co., 963 F.2d 929, 939 (7th Cir. 1992), quoted in Brown v. Amoco Oil Co., 793 F. Supp. 846,851 (N.D.Ind. 1992).
"[T]he word 'procedural' . . . refers to . . . the procedures by which a criminal case is adjudicated, as opposed to . . . the substantive law of crime." Collins v. Youngblood,497 U.S. at 45, 110 S.Ct. at 2720. Sequestration of the jury, like selection of the jury, falls within the category of procedural matters, rather than the category of substantive matters. SeeUnited States v. Bangert, 645 F.2d 1297, 1305-06 (8th Cir.) (referring to sequestration as a "preventative and protective procedure"), cert. denied, 454 U.S. 860, 102 S.Ct. 314,70 L.Ed.2d 158 (1981); Mayola v. Alabama, 623 F.2d 992, 1002 n. 9 (5th Cir. 1980) (referring to sequestration as a "procedural safeguard"), cert. denied, 451 U.S. 913, 101 S.Ct. 1986,68 L.Ed.2d 303 (1981); People v. Dasher, 161 A.D.2d 1207, 1208,556 N.Y.S.2d 422, 423 (referring to failure to sequester the jury as "procedural error"), appeal denied, 76 N.Y.2d 855,560 N.Y.S.2d 994, 561 N.E.2d 894 (1990). Consequently, the question of the sequestration of the jury at the appellant's trial was governed by the amended version of § 12-16-9, which was in effect at that time.
Section 12-16-9(a) provides that the trial court may allow the jury to separate in a capital case only with the consent of the parties. However, under § 12-16-9(d), the sequestration of the jury in a noncapital case is within the discretion of the trial court. See Reeves v. State, 432 So.2d 543, 547-48
(Ala.Cr.App. 1983).
The appellant was prosecuted for the offense of carnal knowledge of a girl under twelve years of age, which is defined in Title 14, § 398, Ala. Code 1940 (Recomp. 1958). Until the United States Supreme Court's decision in Furman v. Georgia,408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), a person convicted of this offense could be sentenced to death, Title 14, § 398, and the offense was therefore classified as a "capital offense." "The only effect of Furman was to eliminate the imposition of the death penalty as it was then enforced, and not to eliminate the classification whereby crimes are categorized as capital for purposes other than punishment." Exparte Bynum, 294 Ala. 78, 81, 312 So.2d 52, 55 (1975); Consequently, although the offense of carnal knowledge of a girl under twelve years of age no longer carries the possibility of a sentence of death,[2] it is still classified as a "capital offense." See Prince v. State, 581 So.2d 874, 878
(Ala.Cr.App. 1991).
Since the crime for which the appellant was tried is classified as a capital offense, the trial court should not have allowed the jury to separate over the objection of the *Page 363 
appellant and without the consent of the parties. However, it is clear from the portion of the record quoted above that the trial court, if not everyone involved, was operating under the assumption that this was a non-capital case. The appellant never requested the trial court to sequester the jury because this was a capital case. Instead, as noted above, the only argument offered at trial in support of the motion to sequester was alleged pre-trial publicity. "The statement of specific grounds of objection waives all grounds not specified, and the trial court will not be put in error on grounds not assigned at trial." Ex parte Frith, 526 So.2d 880, 882 (Ala. 1987).
Furthermore, there is no evidence in the record of adverse pre-trial publicity. "Statements of counsel to the court are not evidence." Evans v. State, 341 So.2d 749, 750
(Ala.Cr.App. 1976), cert. denied, 341 So.2d 750 (Ala. 1977). Therefore, the appellant has failed to show that the trial court abused its discretion in denying his request to sequester the jury.
In connection with this argument, the appellant also asserts that trial court erred in failing to voir dire the jurors as to the effect of alleged prejudicial mid-trial publicity. However, this issue was not raised at trial and, consequently, has not been preserved for our review. Except in cases where the death penalty has been imposed, "alleged error in a criminal proceeding must be properly preserved before an appellate court will examine it; therefore, it is incumbent upon defense counsel to adequately preserve alleged errors in a proceeding by making an appropriate and timely objection." Ross v. State,581 So.2d 495, 496 (Ala. 1991).
 IV.
The appellant alleges that he was denied a fair trial when the trial court denied his request for a continuance made during the trial so that he could secure the presence of an expert witness to rebut the testimony of the state's expert, Dr. Mulchahey.
 "A motion for a continuance is addressed to the discretion of the court and the court's ruling on it will not be disturbed unless there is an abuse of discretion. Fletcher v. State, 291 Ala. 67, 277 So.2d 882 (1973). If the following principles are satisfied, a trial court should grant a motion for continuance on the ground that a witness or evidence is absent: (1) the expected evidence must be material and competent; (2) there must be a probability that the evidence will be forthcoming if the case is continued; and (3) the moving party must have exercised due diligence to secure the evidence. Knowles v. Blue, 209 Ala. 27, 32, 95 So. 481, 485-86 (1923)."
Ex parte Saranthus, 501 So.2d 1256, 1257 (Ala. 1986). On occasion, the Alabama Supreme Court has added additional factors to this list: "the expected evidence must be credible and will probably affect the result of the trial; it must not be merely cumulative or in the nature of impeachment; and the motion for continuance must not be made merely for purposes of delay." Mitchell v. Moore, 406 So.2d 347, 351 (Ala. 1981).
In requesting a continuance of the trial, defense counsel represented that he had been "up all night talking to experts on behalf of" the appellant, that he had contacted an expert in Texas "[t]his morning," and that that expert had "indicated to [defense counsel] that he would be able to give testimony that would rebut much of what they — what Marsha [the sheriff's department investigator involved in this case] has said or what Kristi Mulchahey probably will say." R. 977-78.
The crime occurred in 1972 when the victim was seven years old. Although the victim indicated to certain individuals that she had been sexually abused by the appellant, she never revealed that penetration had occurred or that the appellant had had sexual intercourse with her until 1988, 16 years later, when she disclosed that fact to an assistant district attorney. One of the hurdles, if not the biggest hurdle, the state faced in obtaining a conviction was explaining this delay in reporting. On the other hand, this delay was among the very strongest points in favor of the defense. The very nature of this particular case dictated and demanded that the delay in disclosing the full nature of the sexual abuse would be a key issue at trial by both parties. We do not think this is a case where the appellant can make a legitimate claim of surprise at trial. *Page 364 
"As a reviewing court, we will disturb a trial court's ruling on a continuance only if it amounts to an abuse of discretion.United States v. Darby, 744 F.2d 1508, 1521 (11th Cir. 1984). This issue must be decided in light of the circumstances presented, focusing upon the reasons for the continuance offered to the trial court when the request is denied. UnitedStates v. Uptain, 531 F.2d 1281, 1286 (5th Cir. 1976)." UnitedStates v. Garmany, 762 F.2d 929, 936 (11th Cir. 1985), cert. denied, 474 U.S. 1062, 106 S.Ct. 811, 88 L.Ed.2d 785 (1986). Here, we find no abuse of discretion in the trial court's denial of the request for a continuance. Compare Glass v.State, 557 So.2d 845 (Ala.Cr.App. 1990).
 V.
In State v. Prince, 581 So.2d 874 (Ala.Cr.App. 1991), this court reversed the trial court's pretrial action in dismissing the indictment on the grounds that the appellant had been denied a speedy trial based on the 18-year delay between the commission of the crime and the filing of the indictment. This court held that the appellant "did not establish a due process violation due to the preindictment delay in this case." Prince, 581 So.2d at 880. The Alabama Supreme Court quashed the petition for writ of certiorari and declined to review that decision. See Prince, 581 So.2d at 874. No additional facts are contained in the record of this appeal of the appellant's trial and conviction in connection with that issue. Consequently, the appellant may not seek a redetermination of the issue of preindictment delay. See United States v. Barham,625 F.2d 1221, 1223-24 (5th Cir. 1980), cert. denied, 450 U.S. 1002,101 S.Ct. 1711, 68 L.Ed.2d 205 (1981). "[T]he decision in the prior appeal is the law of the case." Glasscock v. Wallace,488 So.2d 1346, 1348 (Ala. 1986).
The appellant received a fair trial. The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.
[1] The current Alabama Rules of Criminal Procedure were also in effect at the time of the appellant's trial. However, as originally adopted, Rule 1.5, A.R.Crim.P., provided that the new rules "govern[ed] all criminal proceedings commenced at or after 12:01 a.m., January 1, 1991." Unless the parties agreed to operate under the new rules, proceedings commenced prior to January 1, 1991, were governed by the Alabama Temporary Rules of Criminal Procedure and any applicable statutes. See Committee Comments to original Rule 1.5. The appellant was indicted on January 12, 1990. Thus, current Rule 19.3, the rule governing sequestration of the jury, did not, under original Rule 1.5, apply to his trial. Sequestration of the jury was not covered by the Alabama Temporary Rules of Criminal Procedure, leaving § 12-16-9 to govern the matter.
We note that Rule 1.5 has been amended so that the new rules of criminal procedure now "govern all criminal proceedings, without regard to when the proceeding was commenced." However, that amendment was not effective until April 21, 1992, some five months after the appellant's November 1991 trial.
[2] Carnal knowledge of a girl under twelve years of age is the equivalent of the form of first degree rape defined in Ala. Code 1975, § 13A-6-61(a)(3). We note that, under the Alabama death penalty statutes enacted since Furman v. Georgia, 408 U.S. 238,92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), first degree rape is not punishable by death "unless the victim is intentionally killed." Beck v. State, 396 So.2d 645, 652 n. 2 (Ala. 1980). The victim in this case was not killed.