Donald Edward Sealy was indicted on October 28, 1996, by the Lauderdale County grand jury in a three-count indictment, charging sexual abuse in the first degree, violations of §13A-6-66, Code of Alabama 1975. The counts of the indictment are identical and charge Sealy with having sexual contact with his stepdaughter, J.M., he being over 16 years of age and J.M. being less than 12 years of age at the time.
On December 17, 1996, Sealy moved for a dismissal of the indictment on theories of estoppel, immunity, and due process. An evidentiary hearing was held on the motion, after which the trial court granted the motion. Its order reads, in pertinent part, as follows:
 "Donald Edward Sealy was indicted on October 28, 1996, on charges of sexual misconduct involving [J.M.]. Prior to being indicted, Mr. Sealy was interviewed on several different occasions by Lauderdale County Sheriff's Investigator, Reeder Witt, Jr., regarding the alleged offense. Mr. Sealy made several statements to the investigator during these interviews. The settled rule in Alabama is clear according to Womack v. State, 281 Ala. 499, 205 So.2d 579 (1967), which states:
 "`. . . [A]ll extra-judicial confessions are prima facie involuntary, and they can be rendered admissible only by showing that they are voluntary and not constrained or, in other words, free from the influence of fear or hope, applied to the prisoner's mind by a third person. The true test is whether, under all the surrounding circumstances, they have been induced by threat or a promise, express or implied, operating to produce in the mind of the prisoner apprehension of harm or hope of favor. If so, whether true or false, such confessions must be excluded from the consideration of the jury as having been procured by undue influence.' Womack citing Redd v. State, 69 Ala. 255, (1881).
 "`. . . [C]onfessions cannot be given into evidence against a person charged with a crime, until they are first shown to the satisfaction of the court to have been voluntarily made.' Womack citing Owen v. State, 78 Ala. 425, 428 (1885).
 "In the present case, Investigator Witt testified that he informed the defendant, Donald Sealy, that if Mr. Sealy continued counseling and did everything asked of him that he would not be prosecuted. The investigator's inducement gave the defendant, Donald Sealy, the hope of nonprosecution and therefore made any admissions by the defendant involuntary and therefore excludable as evidence.
 "It is the opinion of this Court that the defendant, Donald Edward Sealy, was induced or coerced into cooperating with Investigator Witt by promises of nonprosecution in exchange for his cooperation. After the defendant was given assurances and hope, the defendant was subpoenaed to the Grand Jury, gave testimony, and was subsequently indicted.
 "Therefore, the defendant's Motion to Dismiss the Indictment is GRANTED."
The state, relying on Ala.R.Crim.P. 15.7, appeals. It contends that the trial court abused its discretion and committed reversible error in dismissing the indictment. It argues that the evidence was insufficient to support a finding that Sealy had been improperly induced to testify before the grand jury by a grant of immunity from prosecution and a finding that due process had been violated because of preindictment delay. It further argues that even if the evidence supported Sealy's claim that he had been improperly induced to testify before the grand jury, there still would be no valid grant of immunity from prosecution and he would not be entitled to the dismissal of the indictment.
The record shows that Sealy and Maria Sealy were married in September 1990; that, at the time of their marriage, Maria had a four-year-old child by a previous marriage, J.M.; and that this child lived with the *Page 659 
Sealys in the family home in Lauderdale County during their marriage. They separated in early June 1995 and Maria and J.M. moved to Madison County. On June 19, 1995, Maria filed a complaint with the Madison County Department of Human Resources, alleging that Sealy had sexually abused her daughter, J.M. After a preliminary investigation, including an interview with J.M., the Madison County Department of Human Resources requested that the Lauderdale County Department of Human Resources interview Sealy. Sealy was interviewed on July 21, 1995. The record shows that at this interview he was advised that he had been accused of engaging in sexual misconduct with his stepdaughter, J.M. He testified that he "cooperated" with the person who interviewed him. After this interview, he voluntarily participated for several months in a number of individual and group counseling programs for persons accused of sexual misconduct. On February 21, 1996, the matter was transferred from Madison County to Lauderdale County for appropriate disposition. In March 1996, Sealy was contacted by Reeder Witt, Jr., an investigator with the Lauderdale County Sheriff's Department. Witt had been asked by Lori Williams, an assistant district attorney in the Lauderdale County District Attorney's Office, to interview Sealy in reference to the accusation of sexual misconduct and to obtain a statement from him. Before the interview, Witt advised Sealy of his Miranda rights. He acknowledged that he understood those rights and he agreed to "cooperate" and to make a statement, which he did. He told Witt, inter alia, of his efforts to seek counseling and of to financial assistance he was giving his wife. He testified that Witt told him that he was doing the right thing and that no charges would be filed against him. He denied that he had been advised of his Miranda rights before he gave the statement. Witt denied that he told Sealy that no charges would be filed against him; however, he conceded that Sealy could reasonably have reached that conclusion on from what Witt said to him.
Witt testified that he and Williams concluded that Sealy's wife, Maria, was primarily interested in receiving financial assistance from Sealy and "didn't seam very interested" in prosecuting him criminally, and because of this they made a "conscious decision" not to seek an indictment following the March 1996 interview although they believed that they had sufficient evidence to obtain one. Maria filed for divorce on April 23, 1996. Sealy reported his whereabouts and activities to Witt by telephone on May 22 and June 23, 1996, as he had been instructed to do. In the latter part of September 1996, Sealy signed a settlement agreement in the divorce case, essentially on the terms proposed by Maria. On October 9, 1996, Witt interviewed Sealy again and took another statement from him. Sealy again "cooperated" in giving the statement. Witt did not remember whether he advised Sealy of his Miranda rights on this occasion. He advised Sealy that Maria was pressing the district attorney's office to file criminal charges against him and that Sealy would be subpoenaed to appear before the Lauderdale County grand jury. Sealy testified that Witt encouraged him to appear before the grand jury and to cooperate, and told him that his appearance would be a "mere formality," that it would put an end to the matter, and that he would not be indicted. Witt testified that he told Sealy that Sealy needed to go before the grand jury so that his wife would not be able to continue holding the threat of criminal prosecution over him. Although, he conceded that he encouraged Sealy to go before the grand jury, he denied that he told him that he would not be indicted. He stated that he told Sealy that there was a possibility that he could be indicted and a possibility that he could be "no-billed."
Maria testified that although she sought financial assistance from Sealy after their separation, she never said that she did not want him prosecuted; on the contrary, she said, she had sought his criminal prosecution from the very beginning. Subsequently, Sealy testified before the grand jury, under oath, after he had been advised of and waiving his Miranda rights, and was indicted on October 31, 1996. Sealy and Maria were divorced in December 1996, under the terms of the written agreement signed by Sealy in September. *Page 660 
We conclude from the trial court's order dismissing the indictment that the dismissal was based on two findings by the trial court: (1) that any inculpatory statements made by Sealy would be inadmissible as evidence against him because they were rendered involuntary by the promises made by Investigator Witt that if Sealy cooperated by giving statements and testifying before the grand jury he would not be prosecuted; and (2) that because he was effectively granted immunity from prosecution through the representations of Witt, the state was estopped from indicting him.
Assuming that the evidence presented at the hearing on the motion to dismiss supports Sealy's claim that the statements he made to Witt and to the grand jury were improperly induced by promises of immunity from prosecution and that they would be inadmissible as evidence against him in a trial of his case, he is not entitled to dismissal of the indictment under the facts presented here. Costello v. United States, 350 U.S. 359,76 S.Ct. 406, 100 L.Ed. 397 (1956); United States v. Blue, 384 U.S. 251,86 S.Ct. 1416, 16 L.Ed.2d 510 (1966); Ex parte Radford,557 So.2d 1288 (Ala. 1990). The most he would be entitled to is the suppression of the evidence at trial on proper motion or objection. In Ex parte Radford, the Alabama Supreme Court held:
 "Although our discussion to this point is dispositive of the issues before us, it is appropriate that we address the defendant's argument on the to validity of the indictment, because that indictment may serve as the basis for trial. It is not clear from the record, however, whether the defendant has preserved this issue for appeal. Assuming arguendo that the issue was properly preserved, it is discussed below.
 "The defendant claims that the Department of Forensic Sciences test was performed illegally, and, therefore, that its use by the grand jury to support the indictment is in error. We disagree. In regard to federal constitutional questions, Alabama follows the decisions of the United States Supreme Court. In Aaron v. State, 271 Ala. 70, 77, 122 So.2d 360
(1960), we followed Costello v. United States, 350 U.S. 359 [76 S.Ct. 406, 100 L.Ed. 397] (1956), which held that the Fifth Amendment does not require that the evidence put before the grand jury be completely without taint. As we had stated earlier, `If legal evidence is given [sufficient to support an indictment], . . . an indictment is not subject to be quashed because there was illegal evidence also given.' Fikes v. State, 263 Ala. 89, 81 So.2d 303, 310 (1955). See also Holt v. United States, 218 U.S. 245 [31 S.Ct. 2, 54 L.Ed. 1021] (1910)."
557 So.2d at 1291.
 "The modern trend has been toward the erosion of the right against self-incrimination in regard to grand jury testimony, especially in federal courts. If the government acquired incriminating evidence in violation of the defendant's Fifth Amendment privilege against self-incrimination, the defendant is not entitled to a pre-trial dismissal of the indictment and is at most entitled to the suppression of the evidence and its fruits if they are sought to be used against the defendant at trial. Thus, the failure to inform a grand jury witness who is the target of a grand jury's investigation of the scope of the investigation and of the witness's privilege against self-incrimination does not necessarily require dismissal of the charges in an indictment subsequently returned against the witness.
 "A witness's failure to assert the privilege against self-incrimination after being advised of the constitutional rights against self-incrimination tends to make the indictment invulnerable."
41 Am.Jur.2d Indictments and Information, §§ 231 and 232 (1995) (footnotes omitted).
Assuming that Witt promised Sealy immunity from prosecution in return for his statements and grand jury testimony, he had no authority to make such a promise or to offer immunity, and the state is not estopped from asserting the invalidity of the promise or the attempted offer of immunity under the facts of this case. Sealy is not entitled to a dismissal of the indictment on these grounds. *Page 661 
There is no statutory provision for a general grant of immunity from criminal prosecution under the laws of Alabama. Alabama is one of a number of states that do not have a general statute authorizing prosecuting attorneys to grant immunity from prosecution. Ex parte Graddick, 501 So.2d 444 (Ala. 1986); Exparte Johnsey, 384 So.2d 1189 (Ala.Cr.App.), cert. denied,384 So.2d 1191 (Ala. 1980). However, prosecuting attorneys and judges are not forbidden from granting an accused immunity from prosecution for criminal offenses in exchange for truthful testimony as a state witness against others accused of crimes.Gipson v. State, 375 So.2d 504 (Ala.Cr.App. 1978), aff'd,375 So.2d 514 (Ala. 1979). "[G]rants of immunity play a vital role in the performance of the duties of prosecuting attorneys, and without this method of obtaining valuable testimony prosecuting attorneys would be severely hampered in their efforts to gain convictions." Ex parte Graddick, 501 So.2d at 446. Nonstatutory grants of immunity can be valid in Alabama if they follow the guidelines established in Ex parte Graddick, i.e., the grant of immunity must be signed by the district attorney and approved by the trial judge. "Law enforcement officers are without question totally lacking in power to authorize or grant immunity from arrest or prosecution to one criminally culpable under the laws of this state." Yarber v. State, 368 So.2d 868 (Ala.Cr.App.), cert. denied, 368 So.2d 871 (Ala. 1978). "Breach of such a promise" of immunity by a law enforcement officer "cannot be pled in bar of an indictment, as grounds for dismissal of the prosecution, or as grounds for reversal on appeal." Id., 368 So.2d at 869-70. See also Long v. State, 86 Ala. 36, 5 So. 443
(1889). "Alabama has not embraced the estoppel theory to uphold non-statutory grants of immunity." Mayberry v. State,419 So.2d 262, 265 (Ala.Cr.App. 1982). See Gipson v. State, supra. See alsoYarber v. State, 375 So.2d 1212 (Ala.Cr.App. 1977), rev'd on other grounds, 375 So.2d 1229 (Ala.), on remand, 375 So.2d 1231
(Ala.Cr.App. 1978), rev'd, 375 So.2d 1231 (Ala. 1979), on remand,375 So.2d 1236 (Ala.Cr.App. 1979).
Even though the trial court found that Sealy had been induced or coerced into cooperating with Witt and into incriminating himself by promises of nonprosecution, that finding does not support or warrant a dismissal of the indictment. Witt's promise, because it was invalid, was not binding upon the state, and the state was not estopped from raising its invalidity nor estopped from indicting or prosecuting Sealy. Assuming that Witt's promise did, indeed, cause Sealy to incriminate himself, Sealy is not completely without remedy. He can seek the suppression of his statements at his trial.
In addition to Sealy's claims of estoppel and immunity, which we have discussed above, he alleged in his motion to dismiss the indictment that he had been denied due process of law by preindictment delay. The trial court did not address this claim in its order granting the motion to dismiss the indictment; however, Sealy argues on appeal that preindictment delay also supported dismissal of the indictment.
The record shows that the Madison County and Lauderdale County Departments of Human Resources became aware of the sexual misconduct complaint against Sealy in July 1995. The record also shows that the district attorney in Lauderdale County, the proper official to bring any criminal prosecution, was not aware of the complaint until March 1996. Thus, some state officials were aware of the complaint for approximately 16 months, and the district attorney in Lauderdale County was aware of the complaint for approximately 6 months prior to indictment.
 "`Where the possibility of prejudice derives from pre-indictment delay, the defendant in a criminal case must first resort to the applicable statute of limitations. [United States v. Marion, 404 U.S. 307] at 323, 92 S.Ct. [455] at 464[, 30 L.Ed.2d 468
(1971)]. Only where the applicable statute of limitations has failed to offer relief for pre-indictment delay, are claims of actual prejudice in violation of the Due Process Clause of the Fourteenth Amendment ripe for judicial consideration. The Supreme Court has declared, however, that the "Due Process Clause has a limited role to play" in protecting against the prejudice of pre-indictment delay. [United States v.] Lovasco, 431 U.S. [783] at 789, *Page 662 
97 S.Ct. at 2048[, 52 L.Ed.2d 752 (1977)]. See also Marion, 404 U.S. at 320, 92 S.Ct. at 463; United States v. Harrigton, 543 F.2d 1151 [(5th Cir. 1976)] (absent showing of substantial prejudice amounting to Fifth Amendment due process violation, prosecution is controlled by statute of limitations); United States v. Sample, 565 F. Supp. 1166, 1174 (E.D.Va. 1983) (statute of limitations is a legislatively determined safeguard against potential prejudice while due process is safeguard against actual prejudice).'"
State v. Prince, 581 So.2d 874, 877-78 (Ala.Cr.App. 1991), quoting Stoner v. Graddick, 751 F.2d 1535, 1540-41 (11th Cir. 1985).
As we have previously stated, Sealy was charged in the indictment with having sexual contact with his stepdaughter, he being over 16 years of age and she being less than 12 years of age at the time, a crime defined as sexual abuse in the first degree. § 13A-6-66. There is no limitations period within which a prosecution must be commenced for the offense charged in this case. § 15-3-5(a)(4). The prosecution in the instant case was not barred by a limitations period.
 "The law is well-settled that in order to establish a due process violation due to preindictment delay, a defendant must show `(1) that the delay caused actual prejudice to the conduct of his defense, and (2) that the delay was the product of deliberate action by the government designed to gain a tactical advantage.' United States v. Lindstrom, 698 F.2d 1154, 1157-58
(11th Cir. 1983); United States v. Butler, 792 F.2d 1528, 1533 (11th Cir.) cert. denied, Waites v. United States, 479 U.S. 933, 107 S.Ct. 407, 93 L.Ed.2d 359
(1986). See also United States v. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971) `A defendant is charged with a heavier burden of proof in showing a preindictment delay due process violation than in showing a denial of his speedy trial rights.' Stoner."
State v. Prince, 581 So.2d at 878, quoting Stoner v. State,418 So.2d 171, 180 (Ala.Cr.App. 1982).
In this case, Sealy failed to show that the preindictment delay caused actual prejudice to his defense. In fact, he failed to show even a probability of prejudice. No witnesses became unavailable because of the delay. No showing has been made that he has been hindered in any way in preparing his defense by the lapse of time; in fact, he testified that he was "better off" as a result of the delay. Further, he failed to produce any evidence that the delay was the product of a deliberate or intentional action by the state designed to gain a tactical advantage. Sealy did not establish a due process violation due to the preindictment delay in this case.
We find that the trial court abused its discretion in granting the motion to dismiss the indictment in this case and thereby committed reversible error. Under the facts and circumstances of this case, dismissal of the indictment was plainly inappropriate. The judgment dismissing the indictment is reversed, and the cause is remanded with instructions that the trial court set aside its judgment of dismissal and restore the indictment to the court docket for appropriate proceedings.
The foregoing opinion was prepared by Retired Appellate Judge John Patterson while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Ala. Code 1975.
REVERSED AND REMANDED.
All Judges concur.