The appellant, Jerry Lee Greenhill, was convicted of the murder of P.S.,[1] a violation of § 13A-6-2, Ala. Code 1975, and the attempted murder of R.Y., a violation of § 13A-4-2 and § 13A-6-2, Ala. Code 1975. The trial court sentenced him to serve concurrent sentences of 48 years in prison *Page 1066 
for the murder conviction and 12 years in prison for the attempted murder conviction. This appeal followed.
The State's evidence showed that, on December 27, 1997, R.Y. and his family were having dinner together. When E.Y., R.Y.'s estranged wife, came to the house to retrieve a photograph album, an argument ensued between her and her half-sister. E.Y. left, but she drove up and down the road in front of R.Y.'s house and returned to the house several times. At some point, the appellant drove by the house. R.Y., who believed that E.Y. and the appellant were having an affair, got into his vehicle and chased the appellant down the road. R.Y. returned about 10 minutes later. E.Y. pulled into the yard again and R.Y. came outside to talk to her. While they were in the yard, the appellant pulled into the yard. When R.Y. approached the appellant's truck, the appellant pointed a shotgun at him and denied that he was having an affair with E.Y. Eventually, the appellant lowered the gun. After E.Y. told the appellant that he was being videotaped, the appellant pointed his shotgun at J.F., E.Y.'s brother-in-law who was videotaping, and demanded the videotape. R.Y. then grabbed the barrel of the shotgun and hit the appellant. The appellant got out of the passenger side of his truck and shot P.S., R.Y.'s son, who was standing on the driver's side of the truck. Although P.S. had a gun, the State presented testimony that he never fired his gun. The appellant then shot at R.Y., and R.Y. picked up P.S.'s gun and shot the appellant in the arm.
The appellant presented evidence that he stopped to talk to R.Y. because R.Y. had threatened to involve the appellant's parents in R.Y.'s divorce. According to the appellant, he put his shotgun in his lap when R.Y. walked up because R.Y. had previously threatened him. They did not exchange harsh words until R.Y. saw a cellular phone that he believed belonged to E.Y. in the appellant's truck. As the appellant was backing down the driveway, R.Y. leaned into the truck and hit him in the head. He then slid out of the passenger's side of the truck with his shotgun. The appellant testified that he saw P.S. pointing a gun at him and that they fired at each other almost simultaneously. The appellant testified that he shot at P.S. because he was afraid P.S. would shoot him. According to the appellant, P.S.'s shot hit him in the arm and, because of the injury, he was not able to fire his shotgun a second time.
 I.
First, the appellant argues that the trial court erred when it did not grant E.Y. immunity or admit the transcript of her grand jury testimony into evidence after she invoked her Fifth Amendment right against self-incrimination.
 "There is no statutory provision for a general grant of immunity from criminal prosecution under the laws of Alabama. Alabama is one of a number of states that do not have a general statute authorizing prosecuting attorneys to grant immunity from prosecution. Ex parte Graddick, 501 So.2d 444
(Ala. 1986); Ex parte Johnsey, 384 So.2d 1189
(Ala.Cr.App.), cert. denied, 384 So.2d 1191 (Ala. 1980). However, prosecuting attorneys and judges are not forbidden from granting an accused immunity from prosecution for criminal offenses in exchange for truthful testimony as a state witness against others accused of crimes. Gipson v. State, 375 So.2d 504 (Ala.Cr.App. 1978), aff'd, 375 So.2d 514
(Ala. 1979). `[G]rants of immunity play a vital role in the performance of the duties of prosecuting attorneys, and without this method of obtaining valuable testimony prosecuting attorneys would be severely hampered in their efforts to gain convictions.' Ex parte Graddick, 501 So.2d at 446. Nonstatutory grants of immunity can be valid in Alabama if they follow the guidelines established in Ex parte Graddick, i.e., the grant of immunity must be signed *Page 1067 by the district attorney and approved by the trial judge."
State v. Sealy, [Ms. CR-96-0881, October 17, 1997] 728 So.2d 657
(Ala.Cr.App. 1997) (emphasis added). See also State v. Seneca, [Ms. CR-96-1286, August 14, 1998] 726 So.2d 748 (Ala.Cr.App. 1998). Furthermore, a person may not be forced to accept a tendered grant of immunity and to waive her right against self-incrimination. Ex parte Graddick, 501 So.2d 444 (Ala. 1986). The appellant planned to call E.Y. as a defense witness. However, the recognized nonstatutory power to grant immunity applies only to State witnesses. Furthermore, nonstatutory grants of immunity must be signed by the district attorney, and the Franklin County District Attorney's office did not agree to the proposed grant of immunity in this case. Rather, the State informed the court that it had advised E.Y., when it dismissed robbery and felony-murder charges against her, that it reserved its right to present her case to another grand jury at a later date. Furthermore, even if the State and the trial court had agreed to offer E.Y. immunity in exchange for her testimony, E.Y. could not have been compelled to accept the offer and to waive her Fifth Amendment rights. Exparte Graddick, supra. Accordingly, the trial court properly denied the appellant's request to grant E.Y. immunity and compel her to testify after she had invoked her Fifth Amendment right against self-incrimination.
The appellant also argues that, because E.Y. was unavailable to testify by virtue of invoking her Fifth Amendment right against self-incrimination, the trial court should have admitted the transcript of her grand jury testimony into evidence. Section12-16-214, Ala. Code 1975, provides:
 "The Legislature hereby finds, declares and determines that it is essential to the fair and impartial administration of justice that all grand jury proceedings be secret and that the secrecy of such proceedings remain inviolate. The provisions of this division are to be construed for the accomplishment of this purpose and to promote the following:
". . . .
 "(2) That those persons who have information or knowledge with respect to the commission of crimes or criminal acts be encouraged to testify freely and truthfully before an appropriate grand jury without fear or apprehension that their testimony may be subsequently disclosed, or that they may be subject to injury in their person or property as a result thereof."
(Emphasis added.) Alabama law provides for invading the secrecy of grand jury proceedings in very limited situations.
 "`Before a defendant is allowed to inspect a transcript of a State's witness who testified before the grand jury or before a trial judge should conduct an in camera inspection of such testimony, see Palermo [v. United States, 360 U.S. 343, 79 S.Ct. 1217, 3 L.Ed.2d 1287 (1959)] and Pate [v. State, supra, 415 So.2d 1140 (Ala. 1981)], the defendant should at least and at a very minimum make some offer of proof (1) that the matters contained in the witness' grand jury testimony were relevant to the subject matter of the prosecution; (2) and that there exists an inconsistency between grand jury testimony and trial testimony. . . .
". . . .
 "`Once the defendant has laid a proper predicate for the impeachment of a witness who testified before the grand jury, the trial judge should conduct an in camera inspection as outlined in Palermo, supra, and Pate, supra, to determine (1) whether the statement made by the witness before the grand jury "differed in any respects from statements made to the jury during trial," Pate, supra, and (2) whether the grand jury testimony requested by the defendant "was of such a nature that without it the defendant's *Page 1068 
trial would be fundamentally unfair." Pate, supra. This procedure will best preserve and protect the legislative determination that "it is essential to the fair and impartial administration of justice that all grand jury proceedings be secret and that the secrecy of such proceedings remain inviolate." Alabama Code 1975, Sections 12-16-214 through 226.'
 "Millican v. State, 423 So.2d 268, 270-71 (Ala.Cr.App. 1982)."
Arthur v. State, 711 So.2d 1031, 1078-79 (Ala.Cr.App. 1996), aff'd, 711 So.2d 1097 (Ala. 1997) (emphasis added). The appellant did not offer the transcript of E.Y.'s grand jury testimony for purposes of impeaching her trial testimony. Rather, he offered this testimony because E.Y. had asserted her Fifth Amendment right against self-incrimination at trial. Therefore, E.Y.'s grand jury testimony does not fall within the limited exception to the secrecy of grand jury proceedings. Accordingly, the trial court properly denied the appellant's request to introduce the transcript of E.Y.'s grand jury testimony into evidence.
 II.
Second, the appellant argues that the trial court erred when it allowed Investigator James Christopher Hargett to testify about a videotape and an audiotape recording of the incident. First, he argues that the trial court erred in allowing him to identify the voices on the tape because the State allegedly did not lay a proper predicate for his testimony. Specifically, the appellant argues that Hargett's voice identification was impermissibly suggestive because he did not testify that he knew the people whose voices were on the tape other than by hearing their voices on the tape. However, the appellant did not raise this objection in the trial court. He did not object when Hargett testified that he could recognize individual voices and attribute them to the individuals present. Furthermore, when the State first asked Hargett to identify a voice on the videotape, the appellant objected on the grounds that, "The tape speaks for itself. He was not there. It's hearsay for him to testify about what he's seen on a videotape." (R. 472.) After the State asked Hargett to identify different voices on the videotape as it was being played, the defense raised the following objection:
 "This is an improper witness to be viewing the tape and making descriptions of what happened. He was not there. Anybody that has watched it repeatedly could easily get up and testify to what they observed on the tape if the tape speaks for itself."
(R. 477.) The appellant's objections did not raise the issue of whether Hargett's identification of the voices on the videotape was impermissibly suggestive. Because specific grounds for objections waive all other grounds not specified, the appellant did not properly preserve this issue for our review. Fletcher v.State, 675 So.2d 55 (Ala.Cr.App. 1995), cert. denied, 675 So.2d 58
(Ala. 1996).
The appellant also argues that the State did not lay a proper predicate for Hargett's testimony identifying the voices on the tape and stating whether the gunshots heard on the tapes came from a shotgun or a pistol because the State did not qualify him as an expert witness under Rule 702, Ala. R. Evid. At trial, the appellant did not object on the ground that the State had not properly qualified Hargett as an expert before he identified the voices and testified which gunshots were from a shotgun and which gunshots were from a pistol. At most, the appellant argued that the tapes would speak for themselves. Although he did raise this specific issue in his motion for a new trial,
 "[r]eview on appeal is restricted to questions and issues properly and timely raised at trial. . . . [A] motion for a new trial or a motion for a judgment of acquittal is not sufficient to preserve the issue where no timely objection was *Page 1069 
made at the time the evidence was offered and admitted."
Newsome v. State, 570 So.2d 703, 717 (Ala.Cr.App. 1989) (citations omitted). Therefore, the appellant did not preserve this argument for our review. Furthermore, the appellant asked other witnesses, who had not been qualified as experts, to distinguish between the voices and gunshots heard on the videotape and audiotape.
The appellant raises additional arguments regarding the admissibility of the tapes and Hargett's testimony concerning those tapes. However, because he did not present these issues to the trial court, they are not properly before this court.Fletcher, supra.
 III.
Third, the appellant argues that the trial court erred when it refused to give his requested jury instructions on certain lesser included offenses. Specifically, he argues that the trial court should have charged the jury on first-degree assault and attempted second-degree assault as lesser included offenses of attempted murder and on criminally negligent homicide as a lesser included offense of murder. "No party may assign as error the court's . . . failing to give a written instruction . . . unless the party objects thereto before the jury retires to consider its verdict, stating the matter to which he or she objects and the grounds of the objection." Rule 21.3, Ala.R.Crim.P. Although the appellant excepted to the trial court's refusal to give the requested charges, he did not state any grounds for his objection before the jury retired. (R. 729-31; 750-51.) Accordingly, the appellant did not properly preserve this issue for our review.
 IV.
Fourth, the appellant argues that the trial court's definition of reasonable doubt violated the principles set forth in Cage v. Louisiana, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339
(1990), because it used the term "substantial doubt." The trial court charged the jury as follows:
 "In coming before you upon his plea of not guilty, the defendant is presumed to be innocent of the charges against him. This presumption of innocence remains without — remains with the defendant throughout every stage of the trial and even during your deliberations on the verdict and is not overcome unless, from all of the evidence in the case, each of you are convinced beyond a reasonable doubt that the defendant is guilty. This presumption of innocence with which the defendant enters into the trial is a fact in the case which must be considered by you along with all of the other evidence and is not to be disregarded by you. This presumption of innocence remains with the defendant during the trial until overcome by evidence which convinces you, the jury, of the defendant's guilt beyond a reasonable doubt.
 "A logical question at this point is `What is a reasonable doubt?' Ladies and gentlemen, the law says a reasonable doubt is a fair doubt based upon reason and common sense and arising from the state of the evidence. A reasonable doubt is not a mere possible doubt, but an actual and substantial doubt, a doubt for which a good reason can be given.
 "The reasonable doubt which entitles an accused to an acquittal is not a mere fanciful, vague, or speculative doubt, but a reasonably substantial doubt arising from the evidence and remaining after a careful consideration of all of the testimony as such reasonable, fair-minded and conscientious people would entertain under all the circumstances.
 "Now, the State has the burden of proving the guilt of the defendant beyond a reasonable doubt and this burden remains on the State throughout the case. The defendant is never required to prove his innocence. A reasonable doubt may arise not only from the evidence produced but also from a lack of *Page 1070 
evidence. A defendant has the right to rely upon the failure of the prosecution to establish this proof beyond a reasonable doubt. A defendant may also rely upon evidence brought out on cross-examination of witnesses for the prosecution and upon evidence presented on behalf of the defendant.
 "A reasonable doubt exists in any case when after a careful and impartial consideration of all of the evidence in the case the jurors do not feel convinced to a moral certainty that the defendant is guilty of the charge. If after comparing and considering all of the evidence in this case your minds are left in such a condition that you cannot say that you have an abiding conviction to a moral certainty of the defendant's guilt, then you are not convinced beyond a reasonable doubt. Upon considering all of the evidence, if you have a reasonable doubt about the defendant's guilt arising out of any part of the evidence, you should find the defendant not guilty."
(R. 735-37.) In Knotts v. State, 686 So.2d 431 (Ala.Cr.App.), opinion after remand, 686 So.2d 484 (Ala.Cr.App. 1995), aff'd,686 So.2d 486 (Ala. 1996), cert. denied, 520 U.S. 1199,117 S.Ct. 1559, 137 L.Ed.2d 706 (1997), we held as follows:
 "The Due Process Clause of the Fourteenth Amendment `protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.' In re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970). In Cage v. Louisiana, the United States Supreme Court found that a jury charge that defined `reasonable doubt' by using the phrases `grave uncertainty,' `actual substantial doubt,' and `moral certainty' could have led a reasonable juror to interpret the instructions to allow a finding of guilt based on a degree of proof below that required by the Due Process Clause. Subsequently, the Court `made it clear that the proper inquiry is not whether the instruction "could have" been applied in an unconstitutional manner, but whether there is a reasonable likelihood that the jury did so apply it.' Victor v. Nebraska, 511 U.S. 1, 6, 114 S.Ct. 1239, 1243, 127 L.Ed.2d 583 (1994) (quoting Estelle v. McGuire, 502 U.S. 62, 72-73, and n. 4, 112 S.Ct. 475, 482
and n. 4, 116 L.Ed.2d 385 (1991), emphasis in original). Thus, the constitutional question presented here is whether there is a reasonable likelihood that the jury understood the instructions to allow the conviction based on proof insufficient to meet the Winship reasonable doubt standard. Victor v. Nebraska; Ex parte Kirby, 543 So.2d 587 [643 So.2d 587] (Ala.), cert. denied, 513 U.S. 1023, 115 S.Ct. 591, 130 L.Ed.2d 504 (1994); Cox v. State, 660 So.2d 233 (Ala.Cr.App. 1994).
 "In reviewing the reasonable doubt instruction, we do so in the context of the charge as a whole. Victor v. Nebraska; Baker v. United States, 412 F.2d 1069 (5th Cir. 1969), cert. denied, 396 U.S. 1018, 90 S.Ct. 583, 24 L.Ed.2d 509 (1970); Williams v. State, 538 So.2d 1250 (Ala.Cr.App. 1988). So long as the definition of `reasonable doubt' in the charge correctly conveys the concept of reasonable doubt, the charge will not be considered so prejudicial as to mandate reversal. Victor v. Nebraska; Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954).
". . . .
 ". . . The trial court in the instant case did use the words `actual and substantial doubt' and `moral certainty'; however, it did not use the phrase `grave uncertainty.' This case is clearly distinguishable from Cage. We find that taken as a whole the reasonable doubt instruction correctly conveyed the concept of reasonable doubt to the jury. The trial court's instruction on the presumption of innocence, burden of proof, and weighing of evidence support our finding. We conclude that there is no reasonable likelihood that the jury applied the instructions *Page 1071 
in such a manner as to violate the appellant's constitutional rights."
686 So.2d at 459-61. When reviewing the trial court's reasonable doubt instruction as a whole, "there is no reasonable likelihood that the jury applied the instructions in such a manner as to violate the appellant's constitutional rights." Knotts, 686 So.2d at 461. Therefore, the appellant's argument is without merit.
 V.
Finally, the appellant argues that the trial court erred in granting the State's motion in limine to prevent the defense from making any reference to the allegation that the deceased was HIV-positive. On appeal, he argues that whether he knew the deceased was HIV-positive was relevant to show his state of mind at the time of the shooting. The appellant argues that, because AIDS is "a life-threatening disease and that contraction of HIV constitutes a serious physical injury within the definition of the statute defining serious physical injury," his knowledge of the deceased's alleged HIV-positive status showed that he feared imminent bodily harm from the deceased. In his offer of proof at the pretrial hearing on the motion, the appellant argued that this information could be relevant to the case because "somebody with a potentially fatal disease may have a different behavior, disposition, mind-set than somebody that does not and if it comes out during the testimony then, you know, it just comes out as something that may be relevant as to his — some issues." (R. 155.) When asking the trial court to revisit this issue at the close of the State's case, the defense argued, "We're trying to show he led everybody around him to believe he didn't have it." (R. 522-23.) The appellant's offer of proof as to the expected relevance of the deceased's HIV status presented the trial court with different grounds from those raised on appeal. "`"The trial court cannot be placed in error on grounds not asserted. . . . The court was required to pass only upon the ground of the objection specified by the appellant and those not announced are waived."Johnson v. State, 421 So.2d 1306, 1311 (Ala.Cr.App. 1982).'Riddle v. State, 661 So.2d 274 (Ala.Cr.App. 1994)." Fletcherv. State, 675 So.2d at 56. Accordingly, the appellant did not preserve this issue for our review.
For the foregoing reasons, we affirm the appellant's convictions. However, the record reveals that, during the hearing on the appellant's motion to reconsider the sentence, the State asked the trial court to correct the appellant's sentence on the attempted murder charge. The trial court sentenced the appellant to 12 years in the state penitentiary. At the hearing on the motion to reconsider, the State correctly argued that, because attempted murder is a Class A felony and the appellant used a firearm in the commission of the offense, the minimum sentence the appellant should have received was 20 years in prison. See
§ 13A-5-6(a)(4), Ala. Code 1975. The trial court took the matter under advisement. However, the record does not reflect that the trial court corrected the appellant's sentence for attempted murder.
 "The jury found the appellant guilty of assault in the second degree, 13A-6-21(a)(2), Ala. Code 1975, as charged in the indictment, which necessarily includes a finding that the appellant is guilty of causing injury by means of a `deadly weapon or a dangerous instrument.' Therefore, the appellant should have been sentenced pursuant to § 13A-5-6(a)(5), which provides a mandatory minimum sentence when a firearm is used in the commission of a Class C Felony. See, Clency v. State, 475 So.2d 642 (Ala.Crim.App. 1985) (court held § 13A-5-6(a)(4), Ala. Code 1975, which provides enhanced sentences for Class A felonies committed with a firearm, is mandatory; the court would have no choice but to impose a sentence under this section).
 "As this court held in Hughes v. State, 518 So.2d 890, 891 (Ala.Crim.App. 1987): *Page 1072 
 "`Since the first sentence imposed on [the defendant] was invalid, the trial court had not only the power, but the duty, to sentence [the defendant] as required by law. See, Bozza v. United States, 330 U.S. 160, 67 S.Ct. 645, 91 L.Ed.2d 818 (1947).'
 "(Emphasis in original.) See also, Cline v. State, 571 So.2d 368, 369 (Ala.Crim.App. 1990) This court in Cline noted that, even after the defendant has begun to serve his sentence, the trial court is obligated to alter an invalid sentence; further, any increase in the sentence does not raise double jeopardy problems. 571 So.2d at 370 (citing Breest v. Helgemoe, 579 F.2d 95, 99 (1st Cir.), cert. denied, 439 U.S. 933, 99 S.Ct. 327, 58 L.Ed.2d 329 (1978)). Therefore, because the requisite circumstance for the application of § 13A-5-6(a)(5) is present in this case, application of the section is mandatory. See, Ex parte McCree, 554 So.2d 336 (Ala. 1988). Because this section was not applied, the appellant's first sentence was invalid."
Love v. State, 681 So.2d 1108, 1109 (Ala.Cr.App. 1996). The appellant was indicted for attempting to murder R.Y. by shooting at him with a shotgun. The jury found the appellant guilty of attempted murder as charged in the indictment. Accordingly, the appellant's 12-year sentence fell below the mandatory minimum sentence pursuant to § 13A-5-6(a)(4), Ala. Code 1975. Therefore, we remand this cause for the trial court to sentence the appellant in accordance with § 13A-5-6(a)(4), Ala. Code 1975. The trial court shall take all necessary action to see that the circuit clerk makes due return to this court at the earliest possible time and within 42 days of the release of this opinion. The return to remand shall include a transcript of the remand proceedings conducted by the trial court.
AFFIRMED AS TO CONVICTION FOR MURDER AND ATTEMPTED MURDER AND AS TO SENTENCE FOR THE MURDER CONVICTION; REMANDED WITH DIRECTIONS FOR RESENTENCING ON THE ATTEMPTED MURDER CONVICTION.
Long, P.J., and McMillan, Cobb, and Fry, JJ., concur.
[1] In this case, the appellant alleged that the deceased was HIV-positive. To protect the privacy of the deceased's family, we refer to these individuals by their initials only.
 *Page 264