The appellant, Davarias Cortez Brown, was indicted for murder made capital because he committed it by or through the use of a deadly weapon while the victim was in a vehicle. He was convicted of the lesser included offense of felony murder, a violation of § 13A-6-2(a)(3), Ala. Code 1975. The trial court sentenced him to serve a term of life in prison. The appellant filed a motion for a new trial, which the trial court denied. This appeal followed.
The State presented evidence that, around 2:00 p.m. on October 11, 2005, the victim, Rodney Benefield, was riding in the Central Park area with Kirby Reddick, Dwight Coleman, Ladarius Cooper, Jemale McKinnon, and Dontrinetta Hardy; that they were in three separate vehicles; that Reddick was driving the first vehicle, and the victim was in his vehicle; that Coleman *Page 473 
was driving the second vehicle, and Hardy was in his vehicle; and that Cooper was driving the third vehicle, and McKinnon was in his vehicle. The State also presented evidence that, shortly after the three vehicles turned onto Avenue R, the appellant started shooting at the vehicles; that the victim was shot; and that the victim died from a gunshot wound to the back.
Kirby Reddick testified that, as he was driving, he noticed a man walking on the sidewalk to his right; that the person was wearing jeans and a white tank top; that the person stopped, stooped down, looked at them, and started shooting; that he saw a gun and heard gunshots; that he heard his window shatter; and that the victim said that he had been hit. He also testified that the appellant was the person who shot his vehicle and killed the victim.
Ladarius Cooper testified that, when they were near the Central Park recreation center, he heard gunshots; that he ducked and stopped his vehicle; that, when the gunshots stopped, he looked up and saw that Coleman's vehicle had run into another vehicle on the left side of the road; and that he did not see Reddick's vehicle. He also testified that he saw the appellant standing to the right or passenger side of his vehicle; that the appellant had a gun in his hand, but he was not shooting at that time; that the appellant was kind of stout, had a low haircut, and was wearing a white shirt; and that he knew the appellant from the recreation center.
Finally, the State presented evidence that Cooper Reddick both picked the appellant out of photographic lineups and identified the appellant as the shooter.
The defense presented evidence that Richard Edwards lived at 4725 Avenue R; that, on the afternoon of October 11, 2005, he was sitting in his front room watching television when he heard gunshots; that he went outside after the shooting stopped; that he saw a couple of vehicles parked down the street, but he did not see anyone; that he did not see the appellant outside; that he did not see the appellant run by his house; that he had not seen the appellant in the area earlier that day and that it had been about one month since he had seen the appellant in the area.
Paulette McReynolds testified that she lived at 4709 Court R, which is in the Central Park area; that, on the afternoon of October 11, 2005, her daughter was taking her home from the doctor's office; that, as they were approaching a stop sign in the area, some people ran in front of their vehicle, and they had to stop in the middle of the street; that, when they got to the stop sign at the bottom of the hill, she looked to her right and saw law enforcement vehicles; that she got out of the vehicle and went to stand by a neighbor's house; that, at that time, she learned that a young man had been shot; that she looked for the appellant, but he was not there; that she saw about twelve young men on a porch, but she did not know their names; and that she could name only two of the young men she had seen running.
Demetrius Finn testified that, on the afternoon in question, he was walking down Avenue R; that he saw some people standing around and started walking toward them; that, at that time, he saw two vehicles turn onto the street; that he could not see who was in the vehicles; that, about ten seconds later, he heard gunshots and ran; that he did not see who was shooting; and that he did not know who was shooting. He also testified that he did not see the appellant there that day; that the appellant was not the shooter; and that he had not seen the appellant during the months before the shooting. *Page 474 
Roderick Borden testified that, on October 11, 2005, he went to Trey Richards' house; that, when he arrived, the shooting was over; that he did not hear any gunshots, did not see the shooting, and did not know who did the shooting; that, when he got there, law enforcement officers had not yet arrived; that he saw about five people on the street; that some of the people were adults, a couple of them were children, and some of them were teenagers; and that law enforcement officers arrived between two and three minutes later. He also testified that he did not see the appellant there that day; that he had not seen the appellant in that neighborhood earlier that day; and that the last time he had seen the appellant in the Central Park area was about one month before the shooting.
Robert Dowdell testified that, on the afternoon of October 11, 2005, he was at a friend's house, which was two houses down from the area where the shooting occurred; that he heard between eight and twelve gun shots; that the shots came from more than one type of gun; that, between five and ten seconds after the last shot, he looked out the door; that he saw seven or eight people outside; that some people were standing out there and some were running; and that he did not see anyone with guns. He also testified that he did not see the appellant there; that he had not seen the appellant in the area at any time that day; and that he had not seen the appellant in the area during the week before the shooting. Finally, he testified that, when he looked out, the vehicles that had been shot at were not there and that he left before law enforcement officers arrived.
The appellant's father testified that he got home from work around 3:30 p.m. on October 11, 2005; that he went outside and was cutting the grass; that, between 3:45 p.m. and 4:00 p.m., the appellant came home wearing gray sweat shorts and a white t-shirt that had `"Trust in God'" written on it and had pink and green on it; that the appellant changed into blue jeans and a white t-shirt; and that the appellant left and went back to his girlfriend's house. (R. 290.) He also testified that, after the appellant left, his wife received a telephone call about something that had happened; that his wife came outside and told him about the call; and that he and his wife subsequently picked up the appellant at his girlfriend's house and took him to the police station.
 I.
The appellant argues that the State did not present sufficient evidence to support his conviction for felony murder. Specifically, he contends that there were serious questions concerning Reddick's and Cooper's identification of him as the shooter and that his witnesses completely rebutted their identification. Although the appellant couches his argument as a challenge to the sufficiency of the evidence, he actually appears to challenge the weight of the evidence.[1] *Page 475 
"In Johnson v. State, 555 So.2d 818, 819-20
(Ala.Cr.App. 1989), this court noted the difference in `sufficiency' and `weight' as follows:
 "`The weight of the evidence is clearly a different matter from the sufficiency of the evidence. The sufficiency of the evidence concerns the question of whether, "viewing the evidence in the light most favorable to the prosecution, [a] rational factfinder could have found the defendant guilty beyond a reasonable doubt." Tibbs v. Florida, 457 U.S. 31, 37, 102 S.Ct. 2211, 2215, 72 L.Ed.2d 652 (1982). Accord, Prantl v. State, 462 So.2d 781, 784 (Ala.Cr.App. 1984).
 . . .
 "`In contrast, "[t]he `weight of the evidence' refers to `a determination [by] the trier of fact that a greater amount of credible evidence supports one side of an issue or cause than the other.'" Tibbs v. Florida, 457 U.S. at 37-38
[102 S.Ct. at 2216] (emphasis added). We have repeatedly held that it is not the province of this court to reweigh the evidence presented at trial. E.g., Franklin v. State, 405 So.2d 963, 964
(Ala.Cr.App.), cert. denied, 405 So.2d 966 (Ala. 1981); Crumpton v. State, 402 So.2d 1081, 1085
(Ala.Cr.App.), cert. denied, 402 So.2d 1088
(Ala. 1981); Nobis v. State, 401 So.2d 191, 198 (Ala.Cr.App.), cert. denied, 401 So.2d 204
(Ala. 1981). "`[T]he credibility of witnesses and the weight or probative force of testimony is for the jury to judge and determine.'" Harris v. State, 513 So.2d 79, 81 (Ala.Cr.App. 1987) (quoting Byrd v. State, 24 Ala.App. 451, 136 So. 431
(1931)).[']
"(Emphasis in original.) See Smith v. State,604 So.2d 434 (Ala.Cr.App. 1992); Pearson v. State,601 So.2d 1119 (Ala.Cr.App. 1992); Curry v. State, 601 So.2d 157
(Ala.Cr.App. 1992)."
Zumbado v. State, 615 So.2d 1223, 124CM1 (Ala.Crim.App. 1993). We will not invade the province of the jury and reweigh the evidence in this case. Therefore, the appellant's argument is not well-taken.
 II.
The appellant also argues that the trial court erroneously refused to instruct the jury on the lesser included offense of reckless murder. However, he did not object when the trial court stated that it would not give an instruction on reckless murder. Therefore, this argument is not properly before this court. See Rule 21.3, Ala. R.Crim. P.; Bullock v.State, 697 So.2d 66 (Ala.Crim.App. 1997).
 III.
The appellant further argues that the trial court erroneously refused to instruct the jury on the lesser included offense of reckless manslaughter. During the charge conference, the appellant did not state any facts or make any argument as to why such an instruction would be appropriate under the facts of this case. Also, although he objected to the trial court's refusal to give his requested instruction, the record does not indicate that he stated any specific grounds in support of his objection. Because the appellant did not state any specific grounds to show why such an instruction was appropriate, he did not properly preserve this argument for our review. SeeSullens v. State, 878 So.2d 1216 (Ala.Crim.App. 2003);Greenhill v. State, 746 So.2d 1064 (Ala.Crim.App. 1999); Bullock v. State, 697 So.2d 66
(Ala.Crim.App. 1997).
 IV.
Finally, the appellant argues that the trial court erroneously sentenced him *Page 476 
to serve a term of life in prison. Specifically, he contends that the sentence was outside of the range called for in the sentencing guidelines and that the trial court did not make any specific findings of fact to justify such a sentence. However, § 12-25-35, Ala. Code 1975, which provides for the use of the voluntary sentencing guidelines, states, in pertinent part:
 "(c) In any felony case in which the trial court imposes a sentence that departs from the voluntary standards, and sentences outside the voluntary standards in accordance with existing law, the court may provide a brief written reason for the departure. Neither the departure nor the reason stated for the departure shall be subject to appellate review. . . .
 . . .
 "(f) Failure to follow any or all of the provisions of this section, or failure to follow any or all of the provisions of this section in the prescribed manner, shall not be reviewable on appeal or the basis of any other post-conviction relief."
(Emphasis added.) Because § 12-25-35, Ala. Code 1975, specifically provides that a trial court's departure from the sentencing guidelines and the failure to follow the procedures set forth in that section are not reviewable on appeal, the appellant's argument is not properly before this court.
For the above-stated reasons, we affirm the trial court's judgment.
AFFIRMED.
McMILLAN, SHAW, WISE, and WELCH, JJ., concur.
[1] In his brief to this court, the appellant makes the assertion that the evidence presented at trial "call[s] into question Reddick and Cooper's sufficient opportunity, perspective, attention, time frame and state of mind, given the duress of the situation, to make any identification of a suspect or suspects. Also counsel . . . objected to the in court identification . . . as prejudicial and contrived and having no nexus to the witnesses' ability to accurately identify the suspect or suspects under the original circumstances of the event. Said objection was overruled." (Appellant's brief at pp. 7-8.) However, his argument does not include a statement of his contentions with regard to this claim. Therefore, his argument regarding this claim does not comply with Rule 28(a)(10), Ala. R.App. P., and we will not review it.